EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Federico Sánchez Encarnación t/c/c Federico Rivera Encarnación  Recurrido  v.  Norma Virginia Sánchez Brunet; William Jiménez Rivera, et als.  Recurrentes | Certiorari  2001 TSPR 107  154 DPR \_\_\_\_ |

Número del Caso: CC-2000-570

Fecha: 13/julio/2001

Tribunal de Circuito de Apelaciones:
                              Circuito Regional VII


Juez Ponente:
                              Hon. Frank Rodríguez García


Abogados de la Parte Recurrente:
                              Lcdo. Antonio J. Amadeo-Murga
                              Lcdo. Andrés García Arache

Abogada de la Parte Recurrida:
                              Lcda. Zuleika Llovet Zurinaga


Oficina del Procurador General:
                              Lcda. María Adaljisa Dávila Vélez
                              Procuradora General Auxiliar


Materia: Filiación



        Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Federico Sánchez Encarnación
t/c/c Federico Rivera
Encarnación

    Recurrido

       v.

                          CC-2000-570        CERTIORARI

Norma Virginia Sánchez
Brunet; William Jiménez
Rivera, et als.

    Recurrentes


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ


San Juan, Puerto Rico, a 13 de julio de 2001

El día 5 de marzo de 1997, el señor Federico Sánchez Encarnación, también conocido como Federico Rivera Encarnación, instó ante el Tribunal de Primera Instancia, Sala Superior de Carolina, demanda sobre declaración judicial de filiación, nulidad de institución de herederos, colación, partición y liquidación de caudal relicto contra la Sucesión de Carlos Juan Sánchez Cabezas, quien falleció el día 21 de junio de 1996, y contra Felipe Benicio Sánchez, en calidad de albacea testamentario y contador partidor de la referida Sucesión.

En dicha demanda, alegó, en síntesis y en lo pertinente, que nació el día 18 de julio de 1957,

fruto de las relaciones extramaritales que sostuviera el señor Sánchez Cabezas con su madre, la señora Rosa María Encarnación Rodríguez.[1] Alegó que, aun cuando Sánchez Cabezas nunca lo reconoció oficialmente como su hijo, siempre lo trató como tal y que dicha información era de conocimiento general para todas las personas cercanas a Sánchez Cabezas.[2]

Adujo, además, que fue el señor Claudio Rivera Arias, compañero consensual de su madre para tal momento y con quien ésta habitaba, el hombre que lo reconoció como hijo inscribiéndolo con su apellido en el Registro Demográfico varios días después de su nacimiento. Tres meses después, el demandante fue bautizado consignándose como sus padres a Claudio Rivera Arias y Rosa María Encarnación Rodríguez. Dichas personas, esto es, Rivera Arias y Encarnación Rodríguez, contrajeron matrimonio el 21 de julio de 1959.

Por otra parte, el demandante alegó que Sánchez Cabezas había otorgado testamento abierto el 9 de agosto de 1982, instituyendo como únicas y universales herederas a sus dos (2) hijas, Norma Virgina Sánchez Brunet y Lisa Milagros Sánchez Látimer, y a su esposa Catalina Brunet Ramos.[3] En dicho documento, designó a su hermano Felipe Benicio Sánchez Cabezas como albacea testamentario y contador partidor.

En mérito de lo anterior, el demandante solicitó del foro de instancia que dictara sentencia en la cual se reconociera y declarara su filiación

---

[1] Adujo, en apoyo de la alegación de que Sánchez Cabezas era su padre biológico, que para los años cincuenta, su madre vivía próximo a la Finca La Mina, en Luquillo, Puerto Rico, propiedad de Sánchez Cabezas; que durante los años que ella vivía allí, Sánchez Cabezas, solía visitarla con regularidad a su casa, sosteniendo relaciones íntimas con ella. Que al tiempo y como resultado de dichas relaciones, fue que él nació.

[2] Se alega en la demanda que luego de éste nacer, Sánchez Cabezas continuó visitando a Encarnación Rodríguez; que luego de un tiempo, le pidió a ésta llevarse a Federico a su casa para criarlo, solicitud a la cual ella se negó; que Sánchez Cabezas lo mandaba a buscar, le enviaba dinero; que en distintas ocasiones Sánchez Cabezas, manifestó a sus familiares que Federico era hijo suyo. Véase Demanda, Apéndice, págs. 54-71.

[3] Adujo que Sánchez Brunet, su esposo William Jiménez Rivero y la sociedad legal de gananciales compuesta por ambos, habían recibido bienes, dinero, y valores de parte de Sánchez Cabezas en vida de éste, que deben ser colacionados a la masa hereditaria.

como hijo de Sánchez Cabezas; que anulara la institución de herederos efectuada en el antes mencionado testamento abierto, por razón de preterición de heredero forzoso; y, que una vez se determinara su filiación, procediera, en consecuencia, a invalidar la Certificación de Nacimiento en el Registro Demográfico, en la que aparece con el nombre de Federico Rivera Encarnación, como hijo del señor Claudio Rivera Arias.

El codemandado, Felipe Benicio Sánchez, en calidad de albacea testamentario y contador partidor, sometió contestación a la demanda el 15 de mayo de 1997. Negó que el demandante fuese hijo de Sánchez Cabezas, alegando, por el contrario, que éste era hijo de Rivera Arias; que por ser hijo de Rivera Arias, éste lo había reconocido como tal en el Registro Demográfico, contrayendo matrimonio posteriormente con su madre, Encarnación Rodríguez; alegó, afirmativamente, que la causa de acción instada por el demandante estaba prescrita o había caducado. Los esposos Jiménez Sánchez, presentaron alegación responsiva el 20 de mayo de 1997, sosteniendo el mismo argumento de la prescripción presentado por el codemandado Felipe Benicio Sánchez.

El 18 de junio de 1997, el codemandado Felipe Benicio Sánchez presentó moción de desestimación, fundamentada la misma en la omisión de parte indispensable en la demanda. Adujo que la Sucesión de Claudio Rivera Arias, padre "jurídico" del demandante, compuesta por Julio Rivera, Claudia Rivera, Marta Rivera Encarnación, Antonia Rivera Encarnación e incluso el propio demandante,[4] era parte indispensable en el pleito de filiación instado por éste contra la Sucesión Sánchez Cabezas y que no había sido incluida como tal en la demanda. Alegó, _además_, que la referida Sucesión no era la única parte indispensable que se había omitido y que el demandante debió haber incluido a sus propios hijos o descendientes en su acción en búsqueda de una nueva filiación. Adujo que los hijos del demandante de nombres Federico Rivera Cepeda, Olga Iris Rivera Cepeda, Iris Verónica Rivera Cepeda, Vanesa

---

[4] Julio Rivera y Claudia Rivera son hijos de Claudio Rivera nacidos con anterioridad al matrimonio de éste con la madre del demandante. Marta Rivera Encarnación y Antonia Rivera

Lee Rivera Cepeda y Zuleika Rivera Millán tenían que haberse incluido como parte pues la acción de su padre en búsqueda de una nueva filiación afectaría los derechos que éstos pudieron o puedan haber obtenido con el apellido paterno con el cual nacieron al "trasplantarlos jurídicamente a una nueva familia biológica". En consecuencia, argumentó que procedía la desestimación de la demanda por que, sin la presencia de estas personas, no podía adjudicarse la controversia sobre la filiación, y por que éstas tenían intereses que se verían afectados por el resultado de la presente acción.

Posteriormente, el 17 de julio de 1997, el codemandado Felipe Benicio Sánchez presentó moción de sentencia sumaria alegando, en síntesis, que no existía controversia de hechos en cuanto a que el demandante aparecía inscrito en el Registro Demográfico como hijo de Claudio Rivera, ya que éste lo había reconocido como tal cuatro días después de su nacimiento. Argumentó que el nacimiento del demandante fue luego legitimado por el subsiguiente matrimonio de Claudio Rivera con su madre.[5] Adujo, además, en apoyo de su solicitud, que la causa de acción instada por el demandante había caducado por razón de que los hijos tienen quince (15) años a partir de la mayoría de edad para impugnar la paternidad de su padre jurídico[6]; que al demandante iniciar su causa de acción en marzo de 1997, casi a los cuarenta (40) años de edad, la instó cuando ya había transcurrido dicho término. Sostuvo que

---

Encarnación son hermanas del demandante y nacieron luego del matrimonio de Claudio Rivera con su madre.

[5] Artículo 120 del Código Civil, 31 L.P.R.A. 482, Legitimación por matrimonio de los padres.

[6] Sostuvo que tal acción, al ser una personal sin término fijo dispuesto por ley para su prescripción, estaba sujeta al término de quince (15) años establecido en el Artículo 1864 del Código Civil, 31 L.P.R.A. sec. 5294.

Basó tal fundamento en las decisiones emitidas por este Foro en García v. García, 18 D.P.R. 963 (1912) y en Morales v. Alcaide, 28 D.P.R. 278 (1920), caso expresamente revocado posteriormente mediante la decisión emitida en Almodóvar v. Méndez Román, 125 D.P.R. 218 (1990), donde resolvimos que el término de quince (15) años para presentar ante los tribunales

no procede la aplicación del Artículo 126 del Código Civil, 31 L.P.R.A. sec. 505, en el presente caso, el cual dispone sobre el término que tienen los hijos para instar acción de filiación o reconocimiento contra sus verdaderos padres,[7] pues de lo que se trata aquí es de una acción de impugnación de reconocimiento; que en la alternativa, de no haber término dispuesto por ley para la impugnación del reconocimiento, entonces era de aplicación la doctrina de incuria por que el demandante esperó casi diecinueve (19) años después de advenir a la mayoría de edad para presentar su acción filiatoria. Finalmente, alegó que de entender el tribunal que aplicaba el término dispuesto en el mencionado Artículo 126, ante, el mismo era inconstitucional por violar el debido proceso de ley y la igual protección de las leyes.[8]

Luego de varios trámites procesales, el 23 de junio de 1999, el foro de instancia emitió resolución denegando ambas mociones de desestimación y de sentencia sumaria, respectivamente, archivándose en autos copia de dicha resolución el 29 de junio de ese año. En cuanto a la moción de desestimación por falta de parte indispensable, concluyó dicho foro que la referida Sucesión Rivera Arias debía ser acumulada como parte a los únicos efectos de que, si en su día se determinara y declarara la acción filiatoria a favor del demandante, éstos pudieran expresarse y solicitar el remedio que corresponda en ley por todo aquello en que el demandante se hubiera beneficiado en perjuicio de los intereses de dicha sucesión; ello en vista de que Claudio Rivera había muerto cinco (5) años antes de la radicación de la presente demanda, y de que el demandante no había repudiado la misma. En cuanto a los descendientes del demandante Federico Rivera en específico, resolvió dicho foro que la única persona con interés personal en el

---

una acción de impugnación de reconocimiento, no debía subsistir.

[7] Dicho artículo dispone, en lo pertinente, que:

"Las acciones para el reconocimiento de hijos naturales, sólo podrán ejercitarse en vida de los presuntos padres, o un año después de su muerte...".

reconocimiento de su filiación era el propio demandante, por lo que sus descendientes <u>no</u> eran parte indispensable en la causa de acción de filiación de su padre.

En cuanto a la moción de sentencia sumaria, el foro de instancia sostuvo que el único hecho material relevante en la presente demanda era el referente a la paternidad biológica de Sánchez Cabezas en relación al demandante, paternidad que debía dirimirse luego de la celebración de una vista en su fondo y mediante la presentación de prueba pertinente al efecto. En relación al argumento de la prescripción y/o caducidad, determinó que la acción del demandante <u>era una estrictamente de filiación</u> instada por un hijo fruto de las relaciones de una madre soltera con un hombre casado. En vista de lo anterior, concluyó que a dicha acción le eran aplicables los términos dispuestos en el Artículo 126, ante, y que el demandante había presentado su demanda dentro del año siguiente a la muerte de su presunto padre. Por consiguiente, la referida demanda había sido instada a tiempo. Entendió, además, dicho foro que no era necesario instar un procedimiento de impugnación de paternidad antes de presentar una acción de filiación para establecer su verdadera paternidad.

Inconforme con tal dictamen, Felipe Benicio Sánchez presentó oportuna petición de certiorari ante el Tribunal de Circuito de Apelaciones.[9]

---

[8] Los codemandados Jiménez Sánchez presentaron respectiva moción de sentencia sumaria en la que se unieron a lo expresado por Felipe Benicio Sánchez en la suya propia.

[9] En dicho escrito alegó la comisión de los siguientes errores:

> "1) Erró el Tribunal Recurrido al resolver que cuando un hijo que es reconocido por un hombre y legitimado por el subsiguiente matrimonio entre el hombre que lo ha reconocido y la madre biológica del hijo, impugna su actual paternidad jurídica en busca de una nueva paternidad, no está sujeto al término de caducidad de quince años aplicable a las acciones de impugnación de paternidad de parte de un hijo a su padre jurídico.
>
> 2) Erró el Tribunal Recurrido al resolver que los herederos o sucesión del padre jurídico del demandante no eran parte indispensable en la acción de impugnación de paternidad y filiación instada por Federico Rivera Encarnación.

Mediante resolución emitida el 31 de mayo de 2000, el foro apelativo <u>denegó</u> la expedición del referido auto. Como fundamento de tal denegación expuso que, aun cuando con la presentación de su demanda de filiación el demandante impugna indirectamente el reconocimiento que en su día hiciere Claudio Rivera, <u>su acción es una de filiación, por lo que le son aplicables los términos dispuestos en el Artículo 126, ante</u>. En vista de ello,  concluyó que  el demandante podía establecer su acción de reconocimiento o filiación contra su presunto padre en vida de éste o dentro del año siguiente a su muerte; por lo que al fallecer Sánchez Cabezas el 21 de junio de 1996 y al demandante instar su acción de filiación el 5 de marzo de 1997, su acción de filiación no había caducado.

Por otra parte, el foro apelativo intermedio sostuvo la constitucionalidad del Artículo 126, ante, en virtud de lo resuelto por este Tribunal en el caso <u>Calo Morales v. Cartagena Calo</u>, 129 D.P.R. 102 (1991), y determinó que lo dispuesto en el mismo en cuanto al término concedido al hijo para instar acción de filiación o reconocimiento <u>no</u> viola la igual protección de las leyes en perjuicio de los derechos del presunto padre. El referido foro apelativo no discutió la alegación relativa a falta de partes indispensables, ello debido a que el foro de instancia había determinado previamente que la sucesión de Claudio Rivera debía ser incluida en el pleito.

Por no estar de acuerdo con la actuación del Tribunal de Circuito de Apelaciones, Felipe Benicio Sánchez acudió en revisión --vía certiorari-- ante este Tribunal. El peticionario alega que procede revocar la resolución emitida por el Tribunal de Circuito de Apelaciones, confirmatoria de la emitida por el foro de instancia, debido a que dicho foro apelativo incidió :

---

3) En la alternativa, erró el Tribunal Recurrido al resolver que el Artículo 126 del Código Civil de 1930 es constitucional a despecho de permitir que un hijo con padre jurídico ya establecido pueda impugnar su propia paternidad y obtener una nueva paternidad jurídica después de fallecidos tanto el padre jurídico anterior como el padre jurídico prospectivo."

"...al concluir que la acción de filiación de Federico Rivera no
había caducado a pesar de que había caducado su acción de
impugnación de filiación que lo vinculaba como hijo de Don Claudio
Rivera;

...al no determinar que la ausencia de un término de caducidad
para la acción de impugnación de filiación cuando dicha acción
se une a otra buscando una nueva filiación resulta en una
violación de la igual protección de las leyes en contra del
Artículo II, Sección 7 de nuestra Constitución y la Enmienda 14
de la Constitución de los Estados Unidos;

...al concluir que la disposición de que se uniere a la Sucesión
de Claudio Rivera como parte para los limitados propósitos que
si prevaleciera la acción de filiación se obligara a Federico
Rivera a devolver de lo que se había beneficiado curaba la falta
de partes indispensables."

**Expedimos** el recurso. Contando con la comparecencia de las partes,
y estando en posición de resolver, procedemos a así hacerlo.


I

**A**. Introducción a la Doctrina de la Filiación-

Se denomina filiación la condición a la cual una persona atribuye el
hecho de tener a otra u otras por progenitores suyos; es un hecho biológico
consistente en la procreación de una persona por otras, una inicial realidad
biológica recogida y regulada por el ordenamiento jurídico con el fin de
distribuir derechos y obligaciones entre los progenitores y los seres
procreados por ellos, o, dicho de otra manera, entre padres e hijos. L.
Díez-Picazo y A. Gullón, Sistema de Derecho Civil, Volumen IV, 7ma ed., rev.,
Madrid: Ed. Tecnos, 1997. "La relación jurídica de filiación se establece
entre las personas a quienes el Derecho coloca en la condición de padre y
madre y las que sitúa en la de hijos." Id., a la pág. 249.

El término filiación sintetiza el conjunto de relaciones jurídicas,
que determinadas por la paternidad y la maternidad, vinculan a los padres
con los hijos dentro de la familia. R. Ortega-Vélez, Compendio de Derecho
de Familia, Publicaciones JTS, Tomo I, Capítulo VII, 2000, pág. 384. Así
pues, origina una serie de derechos y obligaciones entre los miembros de
la familia, dando seguridad y publicidad al estado civil de la persona y,
como tal, caracteriza su capacidad de obrar y el ámbito propio de su poder
y responsabilidad. Almodóvar v. Méndez Román, 125 D.P.R. 218 (1990).

La filiación es una relación fundamentalmente jurídica, para la cual el derecho selecciona, con el fin de establecerla, varios criterios, de los cuales los básicos son los biológicos. Id. Más sin embargo, tal realidad biológica no coincide siempre con la jurídica. Expone el profesor L. Díez-Picazo:

> "La filiación no es, pues, necesariamente una situación derivada de un hecho biológico. De algún modo puede decirse que una cosa es ser padre y otra cosa ser progenitor...padre contiene una carga de sentido socio-cultural y jurídico de la que carece el término progenitor. En realidad, los términos paternidad, filiación, padre, hijo, expresan sobre todo categorías jurídicas estructuradas sobre roles culturales que encuentran una definición espontánea en nuestra sociedad. De esta manera, la regla B es padre/madre de A significa que B tiene que cumplir respecto de A el conjunto de deberes –con el correlativo conjunto de derechos– o, si se prefiere, el conjunto de funciones o el conjunto de papeles que la sociedad y el ordenamiento jurídico esperan y definen con esa denominación."[10]

Según Peña Beraldo de Quirós, "ser hijo de tal o cual persona deriva que se tenga una u otra nacionalidad, o una u otra vecindad...cualidades éstas que deciden el régimen de los demás estados de la persona, ya que la capacidad y las relaciones familiares se rigen por la ley personal...de la filiación depende directamente, además, la determinación de las personas que están legitimadas para provocar un cambio de estado civil...por la filiación se conoce si una persona tiene herederos forzosos"[11]; ésta es un estado civil familiar, que tiene como efectos principales, entre otros, el derecho a los apellidos, que es el derecho a que el origen familiar luzca en las señas de identidad, el derecho a los alimentos, los derechos sucesorios, teniendo los hijos respecto de sus padres la cualidad de herederos forzosos, con derecho a la legítima y con derecho a ser los primeros llamados a heredar en la sucesión intestada.[12] "En resumen, la filiación es la nota de mayor jerarquía dentro del parentesco y portadora de las más

---

[10] L. Díez-Picazo y A. Gullón, Sistema de Derecho Civil, ante, a la pág. 251.
[11] R. Ortega-Vélez, Compendio de Derecho de Familia, ante, a la pág. 387; citando a Manuel Peña Bernaldo de Quirós, "De la paternidad y filiación", en M. Amorós Guardiola, Comentarios a las reformas del derecho de familia, Madrid: Ed. Tecnos, 1984, Vol. I, pág. 795.

importantes consecuencias jurídicas..." R. Ortega-Vélez, <u>Compendio de Derecho de Familia</u>, ante, a la pág. 388.

Sabido es que el principio básico de la filiación natural es la procreación o generación física. <u>Almodóvar v. Méndez Román</u>, ante.[13] Así "la procreación es de fácil determinación respecto de la madre, probado el hecho del parto y la identidad del hijo...la identidad del padre, sin embargo, no es de tan sencilla solución." Id., a la pág. 235. Dado el hecho de que la filiación tiene lugar por naturaleza, pudiendo darse ésta como resultado de la generación matrimonial, extramatrimonial e incluso por adopción, y, sin importar cómo surge el vínculo filial, nuestro Código Civil y el Derecho se han encargado de recoger la realidad biológica o la relación creada por ley, distribuyendo derechos y obligaciones entre las personas relacionadas a ese vínculo.[14] "En materia de filiación, el Derecho puertorriqueño ha ido abriendo camino a través de la enmarañada jungla de prejuicios y convencionalismos sociales y tecnicismos de ley para hacer que brille la verdad y se reconozca a todos lo fines legales la relación biológica entre padres e hijos." <u>Ramos v. Marrero</u>, 116 D.P.R. 357, 358 (1985). Examinamos, pues, las distintas doctrinas reconocidas por nuestro ordenamiento y por la jurisprudencia relativas a la figura jurídica de la filiación.

B. <u>Filiación Matrimonial y Filiación No Matrimonial</u>-

"En un sentido estricto, el hecho biológico de la generación sería la fuente de la relación jurídica de filiación, en otras palabras, es el que la determinaría. Pero ese hecho biológico no puede ser constatado por sí mismo, y de ahí que el Derecho establezca los presupuestos de hecho a los cuales liga los efectos de la filiación. Por ejemplo, el matrimonio para la filiación matrimonial, o el reconocimiento para la no matrimonial." L. Díez-Picazo y A. Gullón, <u>Sistema de Derecho Civil</u>, ante, a la pág. 252.

---

[12] L. Díez-Picazo y A. Gullón, <u>Sistema de Derecho Civil</u>, ante, pág. 252.

[13] Véase, además, A. Pérez Fernández, *Ideas generales en torno al nuevo régimen de la filiación*, Anales de la Academia Matritense del Notariado, Madrid, Ed. Rev. Der. Privado, 1982, T.XXV.

[14] Ruth E. Ortega Vélez, <u>La Filiación: Apuntes y Jurisprudencia</u>, San Juan: Ediciones Cisco, 1997.

Existen dos situaciones que cobijan las disposiciones en cuanto a la filiación de un hijo respecto de su padre se refiere. Esto es, la del hijo cobijado por una presunción de legitimidad, por haber nacido éste vigente el matrimonio de sus padres, y la del hijo no matrimonial.

En relación a la filiación matrimonial, nuestro Código Civil consigna dos presunciones; "son hijos legítimos los nacidos después de los ciento ochenta días siguientes al de la celebración del matrimonio y antes de los trescientos días siguientes a su disolución", Artículo 113, Cógigo Civil de Puerto Rico, 31 L.P.R.A. sec. 461; "Igualmente es legítimo el hijo nacido dentro de los ciento ochenta días siguientes a la celebración del matrimonio, si el marido no impugnare su legitimidad." Artículo 114, Código Civil, 31 L.P.R.A. sec. 462.

Este concepto comprende, además, al hijo nacido antes del matrimonio de los padres. Aun cuando al momento de su nacimiento éste se repute extramatrimonial o no matrimonial, ello no impide que éste adquiera la condición de matrimonial, pues de acuerdo a las disposiciones de los Artículos 119 a 122 del Código Civil, 31 L.P.R.A. secs. 481 a 484, el subsiguiente matrimonio de los progenitores permite que la filiación sea considerada matrimonial para todos los efectos en favor o en contra y respecto de las personas implicadas.[15] Las mencionadas disposiciones legales establecen, en síntesis y en lo pertinente, que podrán ser legitimados los hijos habidos fuera del matrimonio; dicha legitimación se verificará por el subsiguiente matrimonio de los padres entre sí, tales hijos disfrutarán de los mismos derechos que los hijos legítimos, y tal legitimación surtirá sus efectos desde la fecha del matrimonio de los padres entre sí.

---

[15] "Serán hijos naturales todos los hijos nacidos fuera de matrimonio...independientemente de que sus padres hubieren podido o no contraer matrimonio al tiempo de la concepción de dichos hijos. Estos hijos quedarán legitimados por el subsiguiente matrimonio de sus padres entre sí." Ley Núm. 229 de 12 de mayo de 1942, según enmendada por la Ley Núm. 354 de 13 de mayo de 1947; véase además R. Ortega Vélez, Compendio de Derecho de Familia, ante, pág. 392.

Hay que mantener presente, por otro lado, que el hijo de mujer no casada nace "sin filiación" respecto a padre alguno por razón de la inexistencia de una persona que pueda ser presuntivamente señalada como padre por ley; adquiere el "estado o condición de hijo" cuando el padre en forma afirmativa lo reconoce como tal.[16] **En vista a ello, se cataloga el reconocimiento como el medio más importante para determinar la filiación no matrimonial**. Este "consiste de una admisión del hecho de la paternidad...que hace el progenitor, la cual permite establecer el estado civil del hijo...es un acto jurídico personal y voluntario del padre..."[17] Se caracteriza por ser además un acto individual, personalísimo, unilateral e irrevocable. Id. De acuerdo a estas características básicas, sostiene el tratadista español Manuel Albaladejo, "que el reconocimiento 'es un acto por el que el que lo realiza *se declara* padre...del hijo de que se trata. Esencialmente consiste, pues, *sólo*, en una pura y simple afirmación de paternidad...biológica'."[18] (Énfasis en el original.) Queda así pues determinada la filiación por la afirmación del progenitor mediante un acto jurídico, "cuyo contenido implícito o explícito es la declaración de que ha existido el hecho biológico de la procreación del que ha nacido el hijo sobre el que recae el reconocimiento." L. Díez-Picazo y A. Gullón, Sistema de Derecho Civil, ante, a la pág. 262.

Así pues, pueden reconocer los progenitores y se presume que lo son las personas que así lo manifiestan. R. Ortega Vélez, Compendio de Derecho de Familia, ante. Por consiguiente, "el progenitor casado puede hacer el reconocimiento de un hijo habido fuera de su matrimonio, de igual forma que pueden ser reconocidos los hijos no matrimoniales..." Id., a la pág. 408. (Subrayado nuestro.)

C. Acciones de Impugnación Reconocidas-

---

[16] R. Ortega Vélez, Compendio de Derecho de Familia, ante, a la pág. 405.

[17] Id., a la pág. 408.

[18] M. Albaladejo, Curso de Derecho Civil, 2da. Ed., Barcelona, Ed. Bosch, 1984, T.IV, pág. 226, según citado en Almodóvar v. Méndez, ante, a la pág. 239.

1.     Impugnación de paternidad o filiación legítima

"Las acciones de impugnación de la filiación legítima

son las acciones de estado civil cuya finalidad es la negación de determinada

paternidad (o maternidad), en las cuales está implicado el interés público

al afectar fundamentalmente a la organización y régimen de la familia." R.

Ortega-Vélez, La Filiación; Apuntes y Jurisprudencia, ante, a la pág. 19.

Se habla de impugnación de paternidad cuando se refiere a la filiación

matrimonial, filiación presumida y determinada por los Artículos 113 y 114

de nuestro Código Civil, ante. Comprendida bajo los postulados de tal

filiación legítima, se encuentra también la que adquiere el hijo nacido antes

del matrimonio de sus padres quedando legitimado su nacimiento al éstos

contraer nupcias.[19]

La impugnación de la paternidad es posible, cuando presumiendo la ley

esa paternidad, el marido de la mujer que ha dado a luz al hijo ataca la

presunción cobijada por los referidos artículos de ley. Por otra parte, se

contempla el interés no tan solo del marido de la madre en instar esta clase

de acción.   Hemos reconocido que dado "el énfasis  moderno en el

descubrimiento de la verdad biológica, así como el reconocimiento de que

en la determinación de las relaciones paterno-filiales confluyen, junto al

interés del marido, los intereses del hijo, los de la madre y los del padre

biológico, ha traído como consecuencia la erosión de la norma de que sólo

el marido, mientras viva, puede impugnar su paternidad." R. Ortega-Vélez,

La Filiación; Apuntes y Jurisprudencia, ante, a la pág. 23.[20]

Por consiguiente, tienen capacidad para instar esta clase de acción,

directa o indirectamente, el marido, sus herederos en circunstancias

especiales, el hijo, como consecuencia incidental a la búsqueda de su

verdadera filiación, el progenitor o padre biológico, y la esposa, en

representación del hijo, cuando éste sea menor de edad. Artículo 116 del

Código Civil, 31 L.P.R.A. sec. 464; Almodóvar v. Méndez, ante; Robles López

---

[19] Artículos 119 a 124 del Código Civil, ante.

[20] Véase, además, Ramos v. Marrero, 116 D.P.R. 357, 364 (1985).

v. Guevarez Santos, 109 D.P.R. 563 (1980); Agosto v. Javierre, 77 D.P.R. 471 (1954).

En consecuencia, tomando en consideración que al cuestionar la paternidad de un hijo, se afecta el honor e intimidad de las personas y las familias, se restringe el círculo de quienes realmente están legitimados activamente para ejercitar esta clase de acción. Por lo que con el fin de dar estabilidad a las relaciones familiares, no se le confiere legitimación a cualquier interesado, sino que, por el contrario, solo la ostentan las personas mencionadas en el párrafo anterior. R. Ortega-Vélez, Compendio de Derecho de Familia, ante.

2.    Impugnación de reconocimiento-

Como mencionáramos previamente, sabido es que el hijo que nace de mujer casada, respecto del marido de ésta, adquiere la condición de matrimonial, esto es, filiación matrimonial o legítima. Por otra parte, y como también mencionáramos, el hijo de mujer no casada, nace "sin filiación" respecto a padre alguno, por lo que el reconocimiento voluntario de parte del progenitor es el mecanismo por excelencia para determinar la filiación de dicha criatura.

Sabido es también que desde el caso de Ocasio v. Díaz, 88 D.P.R. 676 (1963), reconocimos y sostuvimos el derecho de todos los hijos a la absoluta igualdad de trato jurídico fundamentado tal derecho en los postulados constitucionales de igualdad y dignidad del ser humano dimanantes de nuestra Constitución y de lo dispuesto en la Ley Núm. 17 de 20 de agosto de 1952, 31 L.P.R.A. sec.441.[21]

Ahora bien, aun cuando ante la ley todos los hijos tienen los mismos derechos, sin importar las circunstancias en las que se haya dado su nacimiento, es menester "distinguir" entre éstos, ello únicamente con el fin de precisar que la acción de impugnación de paternidad o filiación legítima es aquella mediante la cual se cuestiona la paternidad de los hijos matrimoniales. Por otra parte, no hay tal acción de impugnación de paternidad

---

[21] Véase además Calo Morales v. Cartagena Calo, 129 D.P.R. 102 (1991); Almodóvar v. Méndez, ante.

extramatrimonial, sino la acción, ya reiterada por este Foro, catalogada por nuestro ordenamiento como la de impugnación del reconocimiento. Ello en vista de que a través de tal acto jurídico los hijos habidos fuera de matrimonio pueden adquirir "condición o estado de hijo" de la persona que lo reconoce como tal.

Ahora bien, siguiendo la doctrina española, en Almodóvar v. Méndez, ante, hicimos énfasis en que la acción de impugnación de reconocimiento tiene como base el vicio en el consentimiento prestado, procediendo la misma cuando el impugnador demuestra a satisfacción del tribunal que actuó movido por error, violencia o intimidación.[22] Esto es, lo que se ataca mediante el ejercicio de dicha acción es el propio acto jurídico del reconocimiento, y las circunstancias específicas en las que se dio el mismo, no importando así ni atacándose el nexo biológico del que impugna o el que reconoce en relación al hijo reconocido.

Recalcamos en dicho caso que, no obstante el hecho de que el efecto o consecuencia final que conlleva la presentación de ambas acciones sea el mismo, esto es, el fin del estado filiatorio previamente establecido, en la acción de impugnación de legitimidad, se ataca directamente la relación biológica habida entre el hijo y el padre al que está relacionado jurídicamente.[23] Por el contrario, en una acción de impugnación de reconocimiento lo que se ataca o se persigue impugnar es el acto en sí del reconocimiento.

Cónsono con lo anterior, sostuvimos en el mencionado caso que:

---

[22] Almodóvar v. Méndez, ante; véase, además, M. Albaladejo, Curso de Derecho Civil, ante. Reiteramos además en el mencionado caso, que desde Alcaide v. Morales, 28 D.P.R. 278 (1920), se había aceptado en nuestro ordenamiento la existencia de la acción de impugnación del reconocimiento voluntario.

[23] "La presunción de 'legitimidad' —o, lo que es lo mismo, de que se es hijo de determinada persona— que por ley cobija al hijo matrimonial necesariamente obliga al padre (marido) que interesa y decide impugnar esa 'condición de hijo' a presentar, en la referida acción de impugnación, evidencia que demuestre que él no es el 'padre' de ese 'hijo'. Esto es, en esta acción se ataca directamente la relación biológica de hijo." Id., a la pág. 249. (Citas omitidas.)

"Debe quedar meridianamente claro,...que nada de lo anteriormente señalado significa que se trata de dos grupos distintos de personas. Lo que sucede es que dependiendo del hecho de si se nace de madre casada o soltera–circunstancia sobre la cual el hijo no tiene control alguno– *existe una diferencia inevitable en la forma y manera en que se adquiere la 'condición o estado de hijo'.* Como hemos visto, unos la adquieren desde el *momento mismo del nacimiento* y otros la adquieren desde el *momento del reconocimiento*. Ahora bien, una vez dicha condición se adquiere, *se trata de un mismo y único grupo de personas: hijos*. Como expresara el Tribunal Supremo de España, en su Sentencia de 25 de junio de 1909, pág. 498, 'el reconocimiento que de su hijo hace un padre natural *produce análogos efectos* a la presunción de legitimidad de los hijos habidos de matrimonio legalmente celebrado...'...*En otras palabras, así como la presunción que establece el citado Art. 113 del Código Civil, consiste en suponerlos hijos del marido, la presunción que del reconocimiento se deriva es la de suponerlos hijos del reconocedor.*" (Énfasis en el original.) <u>Almodóvar v. Méndez</u>, ante, a la pág. 251.

Determinamos en <u>Almodóvar</u>, ante, que lo preceptuado por el Artículo 126 del Código Civil, a los efectos de que "el reconocimiento hecho a favor de un hijo...podrá ser impugnado por aquéllos a quienes perjudique", debe ser interpretado a la luz de lo preceptuado en el Artículo 116, ante, sobre quienes pueden impugnar la paternidad legítima. Concluimos, en consecuencia, que la impugnación del reconocimiento puede instarse, además de por el que reconoce, por el padre biológico, por el propio reconocido, de manera indirecta, en las circunstancias en que reclama una filiación incompatible, y por los herederos según lo establecido en el referido Artículo 116.[24] Por consiguiente, le reconocimos legitimación activa para instar la acción de impugnación del reconocimiento <u>a las mismas personas</u> que ostentan legitimación para instar la acción de impugnación de paternidad legítima.

D.      <u>Plazos de Caducidad para Interponer ambas Acciones de Impugnación</u>

Según ilustra R. Ortega-Vélez en su <u>Compendio de Derecho de Familia</u>, ante, cuestionar la realidad de una paternidad, conlleva necesariamente un efecto negativo a la estabilidad de las familias envueltas en la referida acción. Debido a ello, el legislador se ha encargado de establecer una serie de plazos de caducidad para el régimen y ejercicio de la impugnación por

---

[24] <u>Almodóvar v. Méndez</u>, ante, nota al calce núm. 33, a la pág. 264.

las partes realmente legitimadas para instar dicha acción.[25] Así pues, el Artículo 117 del Código Civil, 31 L.P.R.A. sec. 465, ordena que "la acción para impugnar la legitimidad del hijo deberá ejercitarse dentro de los tres meses siguientes a la inscripción del nacimiento en el registro si el marido se hallare en Puerto Rico, y de los seis meses si estuviere fuera de Puerto Rico, a contar desde que tuvo el conocimiento del nacimiento."

Si bien el referido artículo trata sobre la acción a ejercitarse por el marido de la madre y presunto padre, es norma reiterada por este Foro que dicho plazo de caducidad, de tres y seis meses opera, además, tanto contra la impugnación de la filiación legítima por parte del padre biológico, como contra la acción de impugnación de reconocimiento por parte del padre que reconoce a un hijo como suyo; "sólo puede existir un único plazo de caducidad para la presentación de una acción de la 'condición de estado de hijo', ya sea la que impugna el reconocimiento o la que impugna la paternidad." R. Ortega-Vélez, Compendio de Derecho de Familia, ante, a la pág. 409. Ramos v. Marrero, ante; Almodóvar v. Méndez, ante.[26]

     E.    Caso Especial de la Acción de Impugnación de Filiación o Reconocimiento por Parte del Hijo y el Plazo que tiene éste para interponer su acción

Nuestro ordenamiento contempla tres clases de acciones de filiación, a saber, i) acciones de reclamación, esto es, acciones por las que se pretende la afirmación de determinada filiación; ii) acciones de impugnación, esto es, acciones por las que se pretende la negación de determinada filiación; y iii) la acción mixta, la cual pretende la declaración de determinada

_____

[25] "La caducidad es la decadencia de un derecho, o su pérdida, por no haber cumplido la formalidad o condición exigida por ley en el plazo determinado. Esta pérdida del derecho se produce automáticamente por no ejercitarse en el transcurso de dicho plazo." R. Ortega Vélez, Compendio de Derecho de Familia, ante, a la pág. 393; Santiago v. Cruz Maldonado, 109 D.P.R. 143 (1979).

[26] En el mencionado caso de Almodóvar v. Méndez, ante, revocamos, en forma específica y exclusiva, el caso Morales v. Alcaide, ante, en cuanto a la norma establecida en el mismo de que la acción de impugnación del reconocimiento prescribía a los quince años.

**filiación mientras que al mismo tiempo conlleva la negación de otra contradictoria; ambas son declaraciones interdependientes entre sí.**[27]

En el caso de Agosto v. Javierre, ante, a la pág. 493, establecimos que el "art. 116, interpretado literalmente en el sentido de crear una estricta exclusividad, aprovechable solamente por el marido o sus herederos, no es de aplicación a los hijos 'adulterinos' nacidos después de la vigencia de la ley 229 de 1942, ya que tal ley, al crear una nueva causa de acción de filiación, a favor de esos hijos 'ilegítimos', les concede la facultad, esencial, y necesaria a la acción filiatoria, de impugnar la legitimidad. En otras palabras, la ley 229 crea una nueva categoría de personas que pueden impugnar la legitimidad, y en ello trasciende y va más allá de los límites de exclusividad establecidos en el art. 116."

Posteriormente, en Robles López v. Guevarez Santos, 109 D.P.R.563 (1980), reconocimos que a base de la Sección 1 del Artículo II de la Constitución, que consagra como inviolable la dignidad del ser humano, se le concede al hijo, como parte realmente interesada en la búsqueda y determinación de su verdadera paternidad, el derecho de impugnar su presunta filiación.[28] Por consiguiente, "un hijo puede impugnar su presunta paternidad a los fines de reclamar su verdadera filiación." Id., a la pág. 395.[29]

---

[27] R. Ortega-Vélez, Compendio de Derecho de Familia, ante, págs. 392-393; véase, además, a M. Peña Beraldo de Quirós, Derecho de Familia, Madrid: Sección de Publicaciones, Facultad de Derecho, Universidad Complutense, 1989, a la pág. 439.

La impugnación del reconocimiento puede hacerse por el propio reconocido, incidentalmente, en las circunstancias en que esté reclamando una filiación incompatible. Almodóvar v. Méndez, ante, nota al calce núm. 33; Robles López v. Guevárez Santos, 109 D.P.R. 563 (1980); Agosto v. Javierre, 77 D.P.R. 471 (1954).

[28] Véase además R. Ortega-Vélez, Compendio de Derecho de Familia, ante.

[29] Así, "Agosto v Javierre, le insufló vitalidad de causa de acción y reconoció en el hijo personalidad para reclamar su filiación y promover el derecho que la Ley de 1942 le había conferido." Id., a la pág. 396.

Según L. Díez-Picazo y A. Gullón, "las acciones de reclamación de la filiación pretenden un pronunciamiento judicial que determine la filiación de una persona que con anterioridad no ostentaba, bien porque no tenga ninguna, <u>bien porque pese a existir, la reclamación va acompañada de su impugnación</u>." (Subrayado nuestro.)[30]

Conforme establece el Código Civil español, en su Artículo 134, el ejercicio de una acción de reclamación, <u>por el hijo</u> o progenitor, permitirá, <u>en todo caso</u>, la impugnación de la filiación contradictoria. En cuanto a la expresión subrayada 'en todo caso', expresan L. Díez-Picazo y A. Gullón,[31] que <u>la pretensión principal que se ejercita es la de la reclamación de filiación, y la impugnación es accesoria</u>, por ser ambas contradictorias, y no le es aplicable a la acción impugnatoria el plazo de caducidad de la de reclamación. L. Díez-Picazo y A. Gullón. <u>Sistema de Derecho Civil</u>, ante. (Subrayado nuestro.)

En esta clase de casos, <u>la acción predominante es la de la filiación</u>. En vista de que la reclamación de la verdadera filiación conlleva necesariamente la impugnación de la paternidad del esposo de la madre o de la legitimidad, su efecto inescapable es la destrucción de un status de legitimidad si es que tal reclamación de filiación tuviera éxito; ello porque el demandante no podría tener dos padres. <u>Agosto v. Javierre</u>, ante; <u>Ortíz v. Cruz Pabón</u>, 99 D.P.R. 237 (1970); <u>Ortiz Rivera v. Sucn. González</u>, 93 D.P.R. 593 (1967); <u>Calo Morales v. Cartagena Calo</u>, ante.

Siendo la <u>acción principal la de la filiación</u>, en cuanto al plazo que tiene el hijo para ejercitar su acción de filiación, nuestro Código Civil, dispone claramente que "las acciones para el reconocimiento de hijos naturales, sólo podrán ejercitarse en vida de los presuntos padres, o un año después de su muerte..." Artículo 126, ante. En consideración a lo anterior en <u>Calo Morales v. Cartagena Calo</u>, ante, a la pág. 135, <u>recalcamos</u> que: "Aun cuando en *Agosto v. Javierre*, supra, reconocimos que el hijo podía

---

[30] L. Díez-Picazo y A. Gullón, <u>Sistema de Derecho Civil</u> ante, a la pág. 276.

impugnar, implícitamente, la presunción de paternidad del marido, catalogamos la acción del hijo como una *primordialemte* de filiación. Por ello se justificaba la aplicación del término para la acción dispuesto en el Art. 126 del Código Civil...". (Énfasis suplido y en el original.)

Al interpretar todas las disposiciones referentes a la presente doctrina, nos señala, incluso, R. Ortega-Vélez, que "la acción del marido de la madre caduca si transcurre el plazo señalado en el Artículo 117; la acción del hijo, en cambio, no caduca pues éste podrá ejercer la acción en todo tiempo. La jurisprudencia no excluye cualquier interés que pueda impulsar al hijo a que se reconozca judicialmente la verdad de su filiación. El interés del hijo puede oscilar entre lo esencialmente moral hasta cualquier pretensión de orden pecuniario como sería si interés en la herencia de su padre biológico no matrimonial."[32] (Subrayado nuestro.) No podemos perder de perspectiva que el objetivo y propósito esencial de toda clase de acción filiatoria es el de promover la certeza de la verdadera filiación, para que conste legalmente, y de promover el ataque a la que conste legalmente cuando no sea la verdadera. Almodóvar v. Méndez, ante.

Cónsono con la discusión anterior, concluimos y reiteramos que ante un cuadro fáctico en el cual se reclame la verdadera filiación de parte de un hijo, con la consecuencia incidental de que se impugna una filiación legítima o reconocida, de lo que se trata es de una sola acción de reclamación de filiación. Dicho de otra manera, en la llamada acción mixta, la impugnación no tiene carácter independiente de la de la reclamación. Se trata pues de una sola acción de filiación principal de la cual la de impugnación es accesoria. Esto es, el hijo que impugna la filiación jurídica que ostenta, ya sea por matrimonio o legítima o por reconocimiento, es porque necesariamente tiene la convicción real de que otro hombre es su padre.

---

[31] Interpretando la Sentencia del Tribunal Supremo de España de 3 de junio de 1988.

[32] R. Ortega-Vélez, Compendio de Derecho de Familia, ante, a la pág. 404.

## II

Con este trasfondo en mente, procedemos a examinar la controversia principal presentada ante nos. Esto es, si la <u>acción de filiación</u> instada por el demandante había caducado en vista de que, según los peticionarios, había caducado su <u>acción de impugnación</u>.

El foro de instancia determinó que los siguientes hechos no están en controversia, a saber, i) que el demandante es hijo de Rosa María Encarnación Rodríguez; ii) que nació el 18 de julio de 1957; iii) que Claudio Rivera Arias lo reconoció como hijo suyo varios días después de su nacimiento; iv) que Claudio Rivera y Rosa María contrajeron matrimonio el día 21 de julio de 1959; v) que Claudio Rivera falleció en el año 1992; vi) que Carlos Juan Sánchez falleció el día 21 de junio de 1996; y vii) que el demandante instó su acción de filiación el día 5 de marzo de 1997.

Al momento del nacimiento del demandante, la madre de éste no estaba casada con ningún hombre. Así, como hijo de mujer no casada, nació "sin filiación" respecto a padre alguno por razón de la inexistencia de una persona que pudiera haber sido señalada como su padre por ley. Tal y como discutiéramos previamente, como hijo no matrimonial adquirió "estado o condición de hijo" cuando Rivera Arias en forma afirmativa lo reconoció como tal y lo inscribió como hijo suyo en el Registro Demográfico, dándole así su apellido.[33] Así, el demandante se convirtió en hijo de Rivera Arias con todas las consecuencias que tuvo tal reconocimiento. A todos los efectos, tal acto implicó el que Rivera Arias aceptara y reconociera haber sido el progenitor biológico del demandante.

Así las cosas, estando ya reconocido, Rivera Arias y Encarnación Rodríguez contrajeron matrimonio aproximadamente dos años más tarde del nacimiento del demandante. Al contraer matrimonio sus padres entre sí, el nacimiento de éste, habido fuera de matrimonio, fue legitimado. A fin de cuentas, el demandante pasó a ser hijo legítimo de Claudio Rivera y

---

[33] R. Ortega Vélez, <u>Compendio de Derecho de Familia</u>, ante, a la pág. 405.

Encarnación Rodríguez con todos los derechos que tal condición de hijo conlleva.[34]

El demandante, en la búsqueda de su verdadera y alegada filiación con respecto a Sánchez Cabezas, incidentalmente, impugna la paternidad de quien lo reconoció y pasó a convertirse en su padre legítimo, ello porque contrajo matrimonio con su madre. <u>Reiteramos que la causa de acción principal, instada por el demandante, es una de filiación; la misma tiene como consecuencia necesaria la impugnación de la paternidad jurídica de Claudio Rivera</u>. En vista de ello, y como expresamente sostuvimos en <u>Calo Morales v. Cartagena Calo</u>, ante, a la pág. 135, al catalogar la acción como una primordialmente de filiación, <u>es de aplicación el término dispuesto en el Artículo 126, ante, a saber, toda la vida del presunto padre, Sánchez Cabezas, e incluso hasta un año después de su muerte</u>.

Ello así, ya que habiendo resuelto que la acción de impugnación es una consecuencia necesaria de la acción de reclamación de filiación, y no una acción separada e independiente a la misma, <u>no</u> podemos sostener que existen dos plazos distintos para el ejercicio de cada una. <u>En pro de la uniformidad en el ejercicio de acciones como la presente, concluimos y reiteramos que el plazo dispuesto por el Artículo 126, es el único plazo legal aplicable cuando un hijo en búsqueda de su verdadero padre, impugna indirectamente la paternidad de su padre legítimo y la del que lo reconoció como tal</u>.

En vista de que en el presente caso: el demandante nació el 18 de julio de 1957; el alegado padre biológico falleció en junio de 1996; la demanda de declaración de filiación fue radicada el 5 de marzo de 1997; al radicar la demanda el alegado padre tenía menos de un año de fallecido, <u>forzosa resulta la conclusión de que la misma fue radicada en tiempo</u>.

III

---

[34] Artículo 121 del Código Civil, 31 L.P.R.A. sec. 483.

Como segundo señalamiento de error, alegan los peticionarios que la ausencia de un término de caducidad para la acción de impugnación de filiación, cuando dicha acción se une a otra buscando una nueva filiación, resulta en una violación a los postulados constitucionales de la igual protección de las leyes preceptuados en el Artículo II, Sección 7 de nuestra Constitución. Sostienen que de aplicarse los términos del Artículo 126 al caso de autos, ello sería inconstitucional.

En Calo Morales v. Cartagena Calo, ante, resolvimos que: "Las acciones de impugnación que la ley y la jurisprudencia le reconocen a los padres (incluyendo al marido) para impugnar la paternidad legítima o el reconocimiento, no pueden confrontarse con las acciones que se le reconoce al hijo para buscar su filiación, a los fines de hacer un análisis de igual protección de las leyes. La razón es sencilla. Los padres y los hijos no están similarmente situados en nuestro ordenamiento jurídico"; que estas "... *diferencias entre padres e hijos permiten que exista un trato diferencial en los plazos para instar las acciones de filiación de los hijos y las de impugnación de los padres. Tradicionalmente, se ha reconocido que esas diferencias sirven de justificación objetiva para darle a ambos grupos un trato jurídico diferente*"; y que, "aun cuando en *Agosto v. Javierre*, supra, reconocimos que el hijo podía impugnar, implícitamente, la presunción de paternidad del marido, catalogamos la acción del hijo como una *primordialmente* de filiación. Por ello se justifica la aplicación del término para la acción dispuesto en el Art. 126 del Código Civil, supra." (Énfasis en el original).[35]

Reafirmamos, en el día de hoy, la constitucionalidad del Artículo 126, ante, y concluimos que no hubo, en el presente caso, violación alguna a la igual protección de las leyes.

IV

Atendemos, brevemente, el último señalamiento de error presentado por los peticionarios. Estos alegan que ambos foros recurridos erraron al

concluir y determinar  que los descendientes directos del demandante Federico Rivera no eran partes indispensables en la acción de impugnación y reclamación de la alegada nueva filiación de su padre.[36]

La acumulación indispensable de partes está regulada por la Regla 16 de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 16. A estos fines, dispone la Regla 16.1, que:

> "Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada."

Como claramente señala la  mencionada disposición reglamentaria, una parte indispensable es aquella que tiene un interés común en la controversia a resolverse por el foro judicial sin cuya presencia no se puede adjudicar la misma. Hernández Agosto v. López Nieves, 114 D.P.R. 601 (1983); Cepeda Torres v. García Ortiz, 132 D.P.R. 698 (1993). Esta regla tiene como objetivo y propósito el de proteger a la persona ausente de los posibles efectos perjudiciales de un dictamen judicial y así evitar la multiplicidad de pleitos. Rodríguez Rodríguez v. Moreno Rodríguez, 135 D.P.R. 623 (1994); José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo I, Publicaciones JTS, 2000. "Se asegura así que todas las partes afectadas en sus derechos tengan la oportunidad de ser oídos, de suerte que pueda dársele finalidad vinculante a las controversias." Id., págs. 371-372.

"Una parte indispensable es aquella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las otras partes en la acción sin lesionar y afectar radicalmente su interés." Id., a la pág. 371, citando a Pueblo v. Henneman, 61 D.P.R. 189,

---

[35] Véase además Ley Núm. 229, ante; Ocasio v. Díaz, ante; Ortiz Rivera v. Sucn. González, ante; Ortiz v. Cruz Pabón, ante.

[36] No discutimos la contención de los peticionarios, a nivel de instancia, de que procede que se ordene la inclusión de la Sucesión de Claudio Rivera, como parte en el pleito, bajo el fundamento de que, si prevalece la acción filiatoria radicada, procede que se obligue al demandante a devolver los beneficios recibidos de dicha Sucesión.

Ello en vista de que, previamente, el foro de instancia ordenó dicha acumulación, salvando así los intereses que puedan tener los integrantes de la Sucn. Rivera Arias y de que los peticionarios no presentaron argumento

194 (1942). "Bajo la Regla 16.1 una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada, estando esta persona ausente del litigio." Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, ante, a la pág. 371. (Citas omitidas.)

La frase "interés común" contenida en dicha regla no debe interpretarse por vía de criterios puramente semánticos. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, ante. "'Interés común' no es cualquier interés en el pleito. Tiene que ser un interés de tal orden que impida la confección de un decreto sin afectarlo." Id., a la pág. 369. La determinación de si se debe acumular una parte o no se deba acumular depende de los hechos específicos de cada caso individual y particular. <u>Granados Navedo v. Rodríguez Estrada</u>, 124 D.P.R. 693 (1989); <u>Unisys v. Ramallo Brothers</u>, 128 D.P.R. 842 (1991). "Exige una evaluación jurídica de factores tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad. Cuando, en un pleito, las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que pueden resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular." Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, ante, a la pág. 372.

La omisión, o no acumulación, de partes indispensables, constituye una defensa para la parte contra quien se reclama y puede ser fundamento para una moción de desestimación. Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.10.2. <u>Ahora bien, la omisión de dicha parte no constituye impedimento para que el tribunal, a solicitud de parte interesada, conceda oportunidad de traer al pleito a la parte originalmente omitida</u>. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, ante; <u>Meléndez v. E.L.A.</u>, 113 D.P.R. 811 (1983); <u>Oaks Reyes v. Ortiz Aponte</u>, 135 D.P.R. 898 (1994).

Sostienen los peticionarios que la acción del demandante, impugnando su paternidad y procurando obtener una nueva filiación, puede afectar los

---

alguno en referencia a dicho planteamiento, ni en su Petición de Certiorari

derechos de sus hijos de apellido Rivera, derechos que éstos pudieran haber obtenido con el apellido paterno con el que nacieron, y que se verían afectados al "trasplantarlos jurídicamente a una nueva familia biológica". Alegan, además, que de ocurrir la filiación del demandante, sus descendientes vendrían obligados a llevar el apellido Sánchez en vez de Rivera, hecho que también se daría en perjuicio de sus derechos.

En el ordenamiento jurídico español, "las acciones de filiación presentan un específico *intuitus personae* en relación con el actor y son, por ello, personales suyas. Por regla general no se transmiten en la herencia del titular las que éste no hubiera ejercitado en vida. El Artículo 130 permite únicamente que los herederos del actor *continúen* las acciones que hubiesen sido ya entabladas por éste. Menos todavía es posible que la acción sea ejercitada por persona distinta del titular, cualquiera que sean los vínculos que la unan por éste." L. Díez-Picazo y A. Gullón, Sistema de Derecho Civil, ante, a la pág. 276. (Énfasis suplido y en el original.)

En nuestro ordenamiento se ha dispuesto que el derecho de un hijo a iniciar una acción filiatoria es uno personal. Sólo el hijo natural no reconocido es la persona interesada en pedir dicho reconocimiento, en todo caso corresponderá a sus descendientes, o a su sucesión, ser parte en dicha acción a la muerte de su sucesor o causante. Véase: Silva v. Doe, 75 D.P.R. 209 (1953). Este derecho no muere con la persona, sino que se transmite por herencia a sus herederos.[37] Así este derecho se transmite a los descendientes del que reclama su filiación al momento de su muerte. "Los derechos a la sucesión de una persona se transmiten desde el momento de su muerte." Artículo 603 del Código Civil, 31 L.P.R.A. sec. 2085. Por lo que en vida del demandante, éste es el único sujeto con interés, derecho y facultad para ejercitar la presente acción. Los intereses de sus descendientes entrarán

---

ni en su alegato ante este Tribunal.

[37] Desde la decisión emitida en Silva v. Doe, 75 D.P.R. 209, 216 (1953), recalcamos que "la máxima *actio personalis moritur cum persona* 'no ha prevalecido nunca en el derecho civil, ni puede prevalecer, por ser incompatible con el principio fundamental que sostiene que el heredero es el continuador de la persona jurídica del finado".

en juego sólo a la muerte del demandante. En caso de su muerte entonces serían sus descendiente, quienes podrían iniciar o continuar la causa de acción de filiación del demandante. <u>Silva v. Doe</u>, ante. Sólo las personas que constituyen la sucesión del alegado padre, Sánchez Cabezas, son partes demandadas necesarias en un pleito de filiación contra el alegado padre biológico fallecido. <u>Ex Parte Boerman v. Marrero</u>, 34 D.P.R. 126 (1925); <u>Ocasio v. Díaz</u>, ante; <u>Calo Morales v. Cartagena Calo</u>, ante.

Por consiguiente, forzoso resulta concluir que sólo el demandante, en vida de éste, y no sus propios descendientes, es la parte realmente interesada en su reclamación de filiación. Hay que tener en mente que el propósito principal de la Regla 16, ante, es el de proteger la persona ausente de los efectos de un dictamen judicial y el de evitar la multiplicidad y dilación de los pleitos. <u>Rodríguez Rodríguez v. Moreno Rodríguez</u>, ante. Tampoco podemos perder de perspectiva que una parte indispensable es aquella que tiene un interés común en la controversia sin cuya presencia no se puede adjudicar la misma. Ciertamente, la presente reclamación de filiación puede adjudicarse <u>sin</u> la presencia de los descendiente del demandante.

En mérito de lo anterior, procede la confirmación del dictamen emitido por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al foro de instancia para que éste prosiga con los procedimientos pertinentes a la acción de filiación, mediante la celebración de una vista en su fondo. Si en su día se determina, y se declara judicialmente la filiación del demandante respecto a Carlos Juan Sánchez Cabezas, el foro de instancia deberá ordenar la cancelación de la certificación de nacimiento en el Registro Demográfico, en la que aparece el demandante con el nombre de Federico Rivera Encarnación, y como hijo del señor Claudio Rivera Arias.

Se dictará Sentencia de conformidad.


                              FRANCISCO REBOLLO LOPEZ
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Federico Sánchez Encarnación
t/c/c Federico Rivera
Encarnación

     Recurrido

        v.

Norma Virginia Sánchez
Brunet; William Jiménez
Rivera, et als.

     Recurrentes

CC-2000-570     CERTIORARI

**SENTENCIA**

San Juan, Puerto Rico, a 13 de julio de 2001

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria del dictamen emitido por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al foro de instancia para procedimientos ulteriores consistente con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón no intervino. El Juez Asociado señor Rivera Pérez está inhibido.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo