El Juez Asociado Señor Fuster Berlingeri
emitió la opinión del Tribunal.
Tenemos la ocasión para aclarar y precisar cuándo el acreedor hipotecario es parte indispensable en un litigio sobre un inmueble gravado por una hipoteca.
I
El 5 de febrero de 2003 Orlando Pérez Rosa (recurrido) adquirió de Ana Morales Rosado (peticionaria) y su esposo, Samuel Vázquez Lozano, un apartamento ubicado en el Condominio Las Villas en Bayamón. El negocio se realizó mediante la Escritura Núm. 65, otorgada en la misma fe-cha ante el notario Edgardo Delgado Colón. El precio de venta acordado fue de $128,000. El recurrido pagó $16,000 en concepto de pronto pago y gastos de cierre, y constituyó *219 una hipoteca a favor del Banco Popular de Puerto Rico (Banco) por el balance del precio.
Previo al otorgamiento del contrato, los peticionarios no advirtieron al recurrido que el apartamento adoleciera de defecto alguno. El 11 de marzo de 2003 el recurrido se mudó al apartamento, el cual, varios días después, co-menzó a manifestar un grave problema de filtraciones en el techo. Según las determinaciones de hecho del Tribunal de Primera Instancia, el apartamento presentaba proble-mas de filtraciones en el área del cuarto principal, en la sala-comedor y en el clóset de uno de los dormitorios. La filtración en el techo de la sala-comedor se extendía “de lámpara a lámpara”, lo que representaba un área aproxi-madamente de diez pies de largo.
Ante tal situación, el recurrido acudió al administrador del complejo residencial, quien le reveló que la peticionaria había notificado en varias ocasiones a la administración del condominio sobre el problema de filtración y que, en mayo de 2002, había presentado una querella formal ante la oficina administrativa.
El recurrido también supo que pocos meses antes de que él comprara el apartamento, en mayo de 2002, la peticio-naria y su esposo habían presentado una querella ante el Departamento de Asuntos del Consumidor (D.A.Co.), contra una corporación que había realizado trabajos de imper-meabilización en el techo del apartamento. En esa quere-lla, la peticionaria había descrito la magnitud de las filtraciones existentes como “un chorro de agua”.
Por su parte, al recurrido inquirirle sobre el problema de las filtraciones, la peticionaria expresó que no se le ha-bía notificado pues entendía que éste se había corregido. Esto porque, antes de la venta del inmueble, había contra-tado a Walter Rivera Pastor (Rivera Pastor) para que se-llara el techo del apartamento. Sin embargo, Rivera Pastor no se dedicaba a ese tipo de trabajo, ni poseía estudios o preparación especial relacionada a la materia, sino que *220 trabajaba como funcionario público que llevaba a cabo la-bores oficinescas. Este dijo en el juicio que accedió a sellar el techo como un “chivito”, a solicitud de la peticionaria. Testificó también que fue la peticionaria quien seleccionó y compró el material para sellar el techo en una ferretería, y que éste no era un producto profesional. Expresó que él se limitó a leer las instrucciones y a aplicarlo según las reco-mendaciones del fabricante.(1)
Sin embargo, la aplicación del material sellador al techo por Rivera Pastor no resolvió el problema. Dada la magni-tud de las filtraciones, el recurrido no pudo amueblar el apartamento o habitarlo apropiadamente como su residencia. Este se limitó a utilizarlo para pernoctar du-rante los días de la semana de trabajo, y durante los fines de semana viajaba a Aguadilla.
Por los hechos antes descritos, el 9 de junio de 2003 el recurrido presentó ante el Tribunal de Primera Instancia, Sala de Bayamón, una demanda contra los esposos vende-dores y la Sociedad Legal de Bienes Gananciales integrada por ellos. Alegó que su consentimiento para la compra del inmueble estuvo viciado por las actuaciones dolosas de la peticionaria, quien, a sabiendas, le había ocultado el pro-blema de filtraciones del apartamento. Solicitó como reme-dio la resolución de la compraventa, que se obligara a los demandados a comprarle el inmueble por la misma canti-dad que él lo había adquirido, el reembolso de los pagos de la hipoteca que él había estado efectuando, que se le com-pensara por otras sumas invertidas, daños y honorarios de abogado.
La peticionaria contestó la demanda y negó los hechos alegados por el recurrido. Posteriormente, ésta trajo como terceros demandados a los dueños anteriores del aparta-mento y a otras partes, las cuales no comparecieron al pleito.
*221 Luego de varios incidentes procesales, el Tribunal de Primera Instancia celebró la vista en su fondo. Ambas par-tes presentaron evidencia testifical y documental en apoyo de sus respectivas posiciones.(2) Durante la vista, al pre-guntársele por qué no le había comunicado la existencia del problema al recurrido, la peticionaria expresó que “tal vez si me lo hubiera preguntado, se lo hubiera dicho”.
A base de la prueba desfilada, el 2 de septiembre de 2004 el foro de instancia emitió una sentencia a favor del recurrido, en la cual determinó que la peticionaria había actuado de manera dolosa en el otorgamiento del contrato al ocultar la existencia del problema de filtraciones del que adolecía el inmueble. Por consiguiente, el foro primario or-denó a los demandados a comprarle al recurrido el aparta-mento por la misma cantidad que él había pagado y a re-embolsarle la cantidad que éste había desembolsado en concepto de pagos de la hipoteca. Además, le concedió al recurrido una compensación de $10,000 por las angustias mentales sufridas, así como $3,000 en concepto de honora-rios de abogado, ya que determinó que los demandados ha-bían actuado temerariamente. Finalmente, el foro prima-rio desestimó, por insuficiencia de prueba, las reclamaciones instadas por los demandados contra los ter-ceros demandados.
Inconforme con la sentencia emitida, la peticionaria acudió ante el Tribunal de Apelaciones mediante un re-curso de apelación. En éste, la peticionaria alegó que había errado el Tribunal de Primera Instancia al concluir que ella había actuado dolosamente en el otorgamiento del contrato.
El tribunal a quo determinó que el dictamen del foro primario estaba razonablemente sostenido por la evidencia presentada y creída por el juzgador y, que en ausencia de error manifiesto, pasión, prejuicio o parcialidad; éste me- *222 recía deferencia. Por consiguiente, confirmó la sentencia apelada.
De esa determinación acudió ante nosotros la peticiona-ria mediante un recurso de certiorari, en el cual planteó lo siguiente:
a. Incidió el Honorable Tribunal de Apelaciones al confirmar la sentencia declarando con lugar la demanda determinando que el demandante apelado probó la existencia de dolo grave en la contratación según requiere nuestro ordenamiento jurídico.
b. Incidió el Honorable Tribunal de Apelaciones al confirmar la sentencia declarando con lugar la demanda y ordenando la devolución de las contraprestaciones, ya que el demandante recurrido tenía que incluir a los acreedores hipotecarios como parte indispensable. Petición de certiorari, págs. 8 — 9.
El 19 de mayo de 2006 emitimos una resolución me-diante la cual concedimos a la parte recurrida un término para que mostrara causa, si alguna tenía, por la cual no debía expedirse el auto solicitado. Contando con la compa-recencia de ambas partes, pasamos a resolver.
II
 Sabido es que las cuestiones relacionadas a la ju-risdicción de un tribunal deben resolverse con preferencia a cualesquiera otras. Autoridad sobre Hogares v. Sagastivelza, 71 D.P.R. 436 (1950). Por tratarse el segundo seña-lamiento de error de un planteamiento sobre falta de juris-dicción por no haberse acumulado una parte indispensable, pasamos a atenderlo primeramente.
El mecanismo de acumulación de parte indispensable está regulado por la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Parte indispensable es “aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada, estando esta persona ausente del litigio”. J.A. Cuevas Sega- *223 rra, Tratado de Derecho Procesal Civil, San Juan, Pubs. JTS, 2000, T. I, pág. 371. No es cualquier interés sobre un pleito, sino que se trata de un interés de tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos. Pueblo v. Henneman, 61 D.P.R. 189, 194 (1942). Ese interés tiene que ser real e inmediato. No se trata de meras especulaciones o de un interés futuro. Torres v. Alcalde Mun. de Carolina, 135 D.P.R. 110 (1994).
La determinacin de si debe acumularse una parte depende de los hechos especficos de cada caso particular. Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991); Granados v. Rodrguez Estrada II, 124 D.P.R. 593 (1989). Los tribunales tienen que hacer un análisis juicioso que incluya la determinación de los derechos de un ausente y las consecuencias de no ser unido como parte en el procedimiento. Sánchez v. Sánchez, 154 D.P.R. 645 (2001). Es importante auscultar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente. Cuevas Segarra, op. cit., pág. 368. Una vez se concluya que una persona es parte indispensable, el pleito no podrá adjudicarse sin su presencia. Por consiguiente, dicha persona se tiene que hacer formar parte del procedimiento acumulándose como parte demandante o demandada, según corresponda. De este modo, la regla referida busca evitar que la persona ausente se vea privada de su propiedad sin un debido proceso de ley y que el remedio adjudicado sea completo. Romero v. S.L.G. Reyes, 164 D.P.R. 721 (2005).
De tal arraigo es el interés de proteger a las partes indispensables, que la no inclusión en el pleito de una parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso. Sánchez v. Sánchez, supra. Incluso, los tribunales apelativos deben levantar motu proprio la falta de *224 parte indispensable, debido a que ésta incide sobre la ju-risdicción del tribunal. De reconocerse que está ausente una parte indispensable, debe desestimarse la acción. Sin embargo, dicha desestimación no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada. Romero v. S.L.G. Reyes, supra.
En el caso de autos, la peticionaria alegó que el Banco, como acreedor hipotecario, era una parte indispensable para la adjudicación del litigio, por lo que su ausencia del pleito acarreaba la revocación de la sentencia recurrida. Su argumentación estuvo basada en lo resuelto por este Tribunal en Romero v. S.L.G. Reyes, supra.
Por su parte, el recurrido señaló que lo resuelto en Romero v. S.L.G. Reyes, supra, no aplica al caso de autos, pues ambos casos son claramente distinguibles. En la al-ternativa, el recurrido argumentó que, en caso de que este Tribunal decida que la norma establecida en Romero v. S.L.G. Reyes, supra, aplica al presente litigio, por conside-raciones de justicia, ésta no debe aplicarse retroactiva-mente al presente caso. Ello ya que Romero v. S.L.G. Reyes, supra, no fue resuelto sino hasta pasados cinco meses de la peticionaria haber presentado su apelación ante el Tribunal de Apelaciones. El recurrido alegó haber descan-sado en las normas de derecho vigentes al momento de presentar y tramitar su causa de acción, por lo que no debe penalizársele, aplicando retroactivamente la nueva norma establecida en Romero v. S.L.G. Reyes, supra.
Para resolver el asunto referido en los párrafos anterio-res, debemos repasar los hechos de Romero v. S.L.G. Reyes, supra.
En Romero v. S.L.G. Reyes, supra, los esposos Jorge Reyes Rivera y Myriam Carrasquillo Santiago, junto a Angel Luis Romero, otorgaron una escritura pública, mediante la cual se hizo constar la compraventa de un inmueble perte-neciente a Romero. Ese mismo día los esposos compradores otorgaron una escritura de constitución de hipoteca sobre el inmueble objeto del negocio.
*225 Posteriormente, surgieron desacuerdos entre las partes contratantes, los cuales culminaron en un pleito judicial, del cual sólo formaron parte los esposos Reyes-Carrasqui-11o y Romero. Celebrado el juicio en su fondo, el Tribunal de Primera Instancia concluyó que la compraventa referida había sido simulada. El foro primario determinó que los esposos demandados habían fingido la compraventa con el propósito de lograr hipotecar la finca y darle a Romero el dinero obtenido como consecuencia de la constitución de la hipoteca. Todo ello como parte de un plan para ayudar a Romero, quien, debido a problemas económicos, no había logrado obtener financiamiento para pagar sus deudas.
Habiendo concluido que se trataba de un caso de simu-lación absoluta, el foro de instancia, entre otras cosas, or-denó la anulación en el Registro de la Propiedad de los asientos provocados por la escritura, de tal forma que el dominio del inmueble en ella inscrito figurara registrado a favor de su verdadero dueño, Romero. Por consiguiente, tanto la inscripción del dominio a favor de los esposos como la hipoteca inscrita a favor del acreedor hipotecario serían eliminadas del Registro de la Propiedad.
Inconformes, los esposos demandados acudieron ante el Tribunal de Apelaciones, el cual confirmó la sentencia recurrida. Insatisfechos aún, éstos recurrieron ante este Tribunal y alegaron, entre otras cosas, que el banco que era acreedor hipotecario era parte indispensable en el pleito.
En ese caso expedimos el auto de certiorari y revocamos la sentencia recurrida por entender que bajo los hechos particulares del caso, el acreedor hipotecario era parte indispensable del procedimiento. Ello porque siendo nulo el contrato simulado, la titularidad del inmueble hipotecado nunca perteneció a los esposos y éstos no tenían facultad para gravarlo.(3) La ausencia de esa facultad ciertamente *226 incidía en el convenio de garantía hipotecaria, pudiendo afectar el interés del banco sobre el inmueble que garanti-zaba el pago del préstamo.
Como se puede apreciar, según las circunstancias del caso Romero v. S.L.G. Reyes, supra, el derecho del acreedor hipotecario podía quedar destruido o inevitablemente afec-tado por la sentencia dictada si éste se ausentaba del litigio. De ese modo, se le estaría violentando su derecho a un debido proceso de ley. Esa es la situación necesaria para que una persona se considere parte indispensable en un litigio. Sin embargo, ésa no es la situación presente en el caso ante nuestra consideración.
En el caso de autos, a diferencia de Romero v. S.L.G. Reyes, supra, el contrato otorgado por las partes tiene efec-tos jurídicos. El contrato en Romero v. S.L.G. Reyes, supra, no era capaz de producir efectos jurídicos pues al mediar una simulación absoluta, era nulo y como tal no produce efectos. Por consiguiente, éste no podía servir de base para la posterior constitución de la hipoteca. Sin embargo, ésa no es la situación en el presente caso. Aquí las partes lle-varon a cabo un negocio válido, donde se llegó a perfeccio-nar el contrato, aunque éste contó con un consentimiento viciado debido al dolo empleado por la peticionaria. No obs-tante, el vicio en el consentimiento no hace que el contrato sea nulo, inválido o ineficaz. El efecto que tiene el haber mediado dolo grave en el consentimiento prestado es que el recurrido tiene cuatro años desde la consumación del con-trato para, si así lo deseara, pedir su anulación y resolución. 31 L.P.R.A. sec. 3511; Soto v. Rivera, 144 D.P.R. *227 500 (1997). Sin embargo, si el recurrido no ejercitara ese derecho dentro del término dispuesto (los cuatro años), dicho contrato se entendería confirmado y no se podría impugnar. 31 L.P.R.A. sec. 3512; Soto v. Rivera, supra. De este modo, teniendo efectos jurídicos el contrato de com-praventa, a diferencia de Romero v. S.L.G. Reyes, supra, donde el negocio simulado no podía tener efecto jurídico alguno, el recurrido tenía la facultad de gravar el inmueble con una hipoteca. Por consiguiente, el derecho de hipoteca a favor del banco es válido y subsiste.
Otro aspecto que distingue el presente caso de Romero v. S.L.G. Reyes, supra, es el hecho de que los remedios so-licitados y concedidos en ambos casos son sumamente dife-rentes y acarrean consecuencias muy distintas. En Romero v. S.L.G. Reyes, supra, se solicitó la anulación de los asien-tos generados a raíz de la escritura de venta simulada. De este modo el acreedor hipotecario vería desaparecer su ga-rantía real. En cambio, en el caso de autos el remedio soli-citado y concedido no fue la anulación de ningún asiento, sino que la peticionaria le comprara el inmueble al recu-rrido por el mismo precio que éste lo había adquirido. Dicha transacción conllevaría necesariamente una de dos po-sibilidades, ninguna de las cuales afectaría los derechos del acreedor hipotecario. Éstas son: (1) que la peticionaria compre el inmueble mediante el otorgamiento de un nuevo financiamiento, en cuyo caso se saldaría y cancelaría el actual gravamen inscrito a favor del banco; o, (2) que la peticionaria se subrogue en las obligaciones actuales del recurrido y asuma la deuda contraída por éste.(4) De tal forma, el banco no vería su garantía menoscabada como consecuencia de lo alegado en el pleito ni de lo dictaminado en la sentencia recurrida. Inclusive, el Banco no ha visto *228 sus intereses y derechos afectarse de ninguna manera, pues el recurrido ha reconocido que tiene una obligación contractual con el acreedor hipotecario, que continúa satis-faciéndose a cabalidad desde el momento en que se perfec-cionó el contrato de hipoteca.
Según la norma jurídica discutida anteriormente sobre parte indispensable, no puede determinarse mecánicamente que siempre que haya un litigio sobre un inmueble, el acreedor hipotecario será una parte indispensable del procedimiento. La determinación de si debe acumularse una parte depende de los hechos específicos de cada caso particular. Sólo ser parte indispensable aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada, si esta persona se ausentara del litigio.
Por todo lo anterior, resolvemos que, debido a los hechos y circunstancias particulares del presente caso, el acreedor hipotecario no era parte indispensable en el litigio. Por con-siguiente, no erró el Tribunal de Apelaciones al no revocar, por ese fundamento, la sentencia recurrida.(5)
III
En su recurso, la peticionaria planteó que incidió tanto el foro primario como el intermedio al concluir que ella había actuado dolosamente en el otorgamiento del contrato. No le asiste la razón.
Es harto conocido que la existencia de un contrato requiere, entre otros elementos esenciales, que los contratantes expresen su consentimiento al negocio. 31 L.P.R.A. *229 sec. 3391; Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996). Ese consentimiento, de ordinario, se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio. Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517 (1982).
Ahora bien, el consentimiento es nulo cuando se ha producido por error, violencia, intimidación o dolo. 31 L.P.R.A. sec. 3404. De mediar alguno de estos factores, la parte afectada cuenta con una acción para solicitar la nulidad del contrato, la cual puede ser ejercitada dentro de un periodo de cuatro años, contados a partir de la consumación del contrato o desde que ha cesado la violencia o intimidación contra dicha parte. Colón v. Promo Motor Imports Inc., 144 D.P.R. 659 (1997). En estos casos, las partes están generalmente obligadas a restituirse las prestaciones objeto del contrato. 31 L.P.R.A. sec. 3514.
Existe dolo cuando una parte es inducida a celebrar un contrato mediante maquinaciones insidiosas. El dolo implica
... todo un complejo de malas artes, contrario a la honesti-dad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a resumirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, ade-más, ha previsto y querido las consecuencias antijurídicas pro-venientes de él .... Es la voluntad consciente de producir un acto injusto. Colón v. Promo Motor Imports, Inc., supra, pág. 666.
El dolo puede manifestarse al momento de la contrata-ción o posteriormente, en la consumación del contrato. Mayagüez Hilton Corp. v. Betancourt, 156 D.P.R. 234 (2002). El dolo no se presume. No obstante, como cualquier otro elemento mental, no tiene que ser establecido directa-mente, sino que puede inferirse de las circunstancias pre-sentes en el caso en particular. Íd.
Para que produzca la nulidad del contrato, el *230 dolo tiene que ser grave(6) y no meramente incidental(7) y no puede haber sido empleado por ambas partes contratantes. El dolo incidental sólo da lugar a la indem-nización de los daños y perjuicios ocasionados. Íd.; 31 L.P.R.A. sec. 3409.
En el caso de autos, el Tribunal de Primera Instancia determinó que la peticionaria había incurrido en dolo grave, porque había ocultado deliberadamente al recurrido que el apartamento sufría de un serio problema de filtraciones. Dicho foro expresó:
La prueba documental y testifical creída por este Tribunal demostró claramente el dolo y el engaño al cual fuera sometido el Sr. Orlando Pérez Rosa ....
La demandada admitió haber alterado la querella presen-tada a DACO. Su comportamiento en sala y gestos comunican grandes diferencias con sus expresiones verbales. Su mirada en ocasiones baja, esquiva en otras, ojos muy abiertos, temblo-rosa de manos y mandíbula, contrasta grandemente con la frialdad y c[á]lculo al contestar.
No albergamos la más mínima duda que [la peticionaria] premeditadamente ocultó al demandante toda la situación de la filtración y el arreglo temporero y casero por ella realizado. Sus expresiones “tal vez si me lo hubiera preguntado, se lo hubiera dicho”, unido a su lenguaje corporal son muestra de la maquinación insidiosa realizada por ella. Apéndice, pág. 124.
Es norma conocida que la apreciación de la prueba realizada por el juzgador de primera instancia merece deferencia y que sus determinaciones deben ser respetadas, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Orta v. Padilla, 137 D.P.R. 927 (1995).
*231 En el caso de autos, el dictamen recurrido está sostenido por la prueba vertida y creída por el juzgador. La peticio-naria incurrió en dolo grave al callar sobre una circunstan-cia importante respecto al objeto del contrato. Por consi-guiente, el error señalado no se cometió.
IV
Por los fundamentos antes expuesto, se expide el auto de certiorari y se confirma la sentencia recurrida.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rebollo López disintió. Entendió que, dados los hechos particulares del caso, el Banco Popular de Puerto Rico es una parte indispensable en éste. El Juez Rebollo López consideró, además, que la ponencia mayoritaria emitida deja en el limbo jurídico unas impor-tantes cuestiones o interrogantes que deben ser atendidas y resueltas por el Tribunal. Unicamente a manera de ejem-plo, y entre otras, cuestionó: si la compraventa en contro-versia adolece del vicio de dolo grave en el consentimiento —lo cual tiene la consecuencia inescapable de hacerla nula y, en consecuencia, procede decretar la resolución del nego-cio jurídico llevado a cabo, volviendo la situación a su es-tado original— ¿cómo es posible que el comprador del apar-tamento permanezca como dueño de dicho inmueble en el Registro de la Propiedad, y responsable del pago de la hi-poteca que lo grava, cuando él jurídicamente no es el dueño de dicho apartamento?

 Valga mencionar que la oficina de administración del complejo residencial había notificado a los residentes que no debían reparar las filtraciones por su cuenta, pues eso podía afectar la solicitud ante D.A.Co.

 A pesar de que la peticionaria había anunciado que contaría con el testimonio de ocho testigos, ésta sólo presentó tres de los testigos anunciados.

 Como se sabe, el contrato de hipoteca, como todo contrato, requiere para su validez que concurran los elementos esenciales de consentimiento, objeto y causa. 31 *226 L.P.R.A. see. 3391. La validez del contrato de hipoteca depende, además, de que se cumplan los requisitos siguientes: (1) que se constituya para asegurar el cumpli-miento de una obligación principal; (2) que la cosa hipotecada pertenezca en propie-dad al que la hipoteca; (3) que las personas que constituyan la hipoteca tengan la libre disposición de sus bienes o en caso de no tenerla, se hallen legalmente autori-zadas para ello, y (4) que la escritura se inscriba en el Registro de la Propiedad. 31 L.P.R.A. sees. 5001 y 5042.

 Esta última posibilidad requeriría el consentimiento del acreedor hipotecario.

 Esta determinación hace innecesario que nos pronunciemos sobre la petición del recurrido de no aplicar de forma retroactiva la norma establecida en Romero v. S.L.G. Reyes, 164 D.P.R. 721 (2005).

 El dolo grave es aquel que recae sobre elementos esenciales del contrato y determina el consentimiento. Es el que inspira a contratar, sin el cual no hubiera habido contratación. J.R. Vélez Torres, Curso de derecho civil: derecho de contratos, San Juan, Rev. Jur. U.I.P.R., 1990, T. IV, Vol. II, págs. 58-61.

 El dolo incidental es aquel que no tiene una influencia decisiva en la esencia de la obligación, sino que sólo facilita la celebración del contrato. Sin el dolo incidental, el contrato de todas formas se hubiera celebrado, aunque no con las mismas condiciones. Vélez Torres, op. cit.