# 2007 DTA 118

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL ARECIBO
PANEL IX**

CELENIA SANTIAGO VÁZQUEZ, OSCAR RÍOS RÍOS
Recurridos

v.

HOSPITAL DOCTOR'S CENTER, INC.; DR. ARSENIO RAMÍREZ HERNÁNDEZ POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES QUE COMPONE CON FULANA DE TAL; FULANO DE TAL; COMPAÑÍA ABC
Peticionarios

Núm. KLCE-2007-01455

San Juan, Puerto Rico, a 15 de octubre de 2007

Panel integrado por su Presidente, el Juez Martínez Torres,
la Juez Feliciano Acevedo y el Juez Miranda De Hostos

Miranda De Hostos, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCIÓN**

Comparece el Hospital Doctor's Center Inc. (en adelante Doctor's Center), mediante recurso de *certiorari* instado el 3 de octubre de 2007, impugnando una resolución emitida por el Tribunal de Primera Instancia, Sala de Arecibo, que denegó una moción que ésta presentara, para que se desestimara la demanda por impericia médica instada en su contra por la recurrida Celenia Santiago Vázquez y Oscar Ríos Ríos.

Alega el Doctor's Center que:

*"Erró el Honorable Tribunal de Primera Instancia, Sala de Arecibo, al denegar la moción de desestimación al amparo de la Regla 16 y 10.2, radicada por la parte recurrente, Doctors' Center Hospital; y en consecuencia de ello, denegó el acumular a aquella parte cuya negligencia fue la causa próxima de los daños alegados por la parte demandante-recurrida, según han concluido los peritos de la parte demandante-recurrida y de la co-demandada-recurrida, Dr. Arsenio Ramírez."*

No le asiste la razón al peticionario Doctor's Center por los siguientes fundamentos.

Primero, porque el dictamen en que el foro de instancia le denegó a este litigante que se le permitiera traer al pleito a un tercero demandado, se emitió el 31 de julio de 2007 y se notificó el 2 de agosto de 2007. Por lo

tanto, el recurso instado el 3 de octubre de 2007, es decir a sesenta y un (61) días de notificada la aludida resolución, sin mediar justa causa para tal dilación, no puede por *fiat* el impugnar dicho dictamen al ser presentado fuera del plazo prescrito por ley.

Segundo, aun considerando el recurso como una revisión de la resolución emitida por el foro de instancia el 4 de septiembre de 2007, que denegó la moción de Doctor's Center para que se desestimara la demanda por no acumularse una parte indispensable o en la alternativa por dejar exponer una reclamación que justifique la concesión de un remedio, bajo las Reglas 10.2 y 16 de Procedimiento Civil, tampoco procede en derecho. La demanda contiene alegaciones suficientes en derecho para que consideren los méritos de la reclamación. Asimismo, la recurrida como demandante, escogió a las partes a ser demandadas y los alcances jurídicos que ello conlleva, y el tercero demandado que invoca el Doctor's Center, no es parte indispensable, frente a las alegaciones en su contra como hospital, por la negligencia médica de sus empleados, inclusive los médicos de la Sala de Emergencia.

Se deniega expedir el auto de *certiorari*, veamos porqué.

# I

Los hechos tienen sus inicios el 6 de mayo de 2006, cuando la recurrida Celenia Santiago Vázquez y su esposo Oscar Ríos Ríos, presentaron una demanda en daños y perjuicios contra el Hospital Doctor's Center, Inc. y el doctor Arsenio Ramírez Hernández. En su demanda alegó la recurrida que quedó embarazada de su primer hijo, para lo cual comenzó a recibir tratamiento prenatal a las siete semanas de su embarazo con el doctor Arsenio Ramírez Hernández, especialista en obstetricia y ginecología. La fecha de parto se fijó por dicho galeno, para el 1 de enero de 2006. (Ap. VI, págs. 17-21.)

Aunque durante el cuidado prenatal la recurrida no enfrentó mayores complicaciones, el 28 de diciembre de 2005, experimentó contracciones moderadas y esporádicas. Ante dicho cuadro clínico, el doctor Arsenio Ramírez Hernández, luego de una evaluación de la recurrida, le recomendó descanso en su hogar porque no estaba de parto.

Así las cosas, el 1 de enero de 2006, alegadamente fecha estimada para el parto, la recurrida desarrolló contracciones mucho más fuertes y recurrentes por lo cual visitó la Sala de Emergencia del Hospital Doctor's Center de Arecibo. La recurrida, según se alega, fue atendida por el médico de turno en dicha sala el cual diagnosticó que la recurrida no estaba de parto, todo ello sin consultar al doctor Arsenio Ramírez Hernández.

Nuevamente, el 4 de enero de 2006, la recurrida fue a consulta donde el doctor Arsenio Ramírez Hernández, pues alegadamente sufría de contracciones mucho más recurrentes y dolorosas, cada cinco a diez minutos. Luego del examen del mencionado galeno, le dio una cita para el plazo de una semana.

Según se alega por la recurrida en su demanda, ese mismo día, el 4 de enero de 2006 y por continuar con las *"contracciones sumamente dolorosas y recurrentes y no sentía ningún movimiento de su bebé"*, acudió por segunda vez a la Sala de Emergencia del mencionado hospital de Arecibo, en el cual le dieron de alta luego que el médico le indicara que, *"los bebés a los nueve meses dejan de moverse"*. (Ap. VIII, pág. 30.) Alegadamente, tampoco consultaron ese día en la Sala de Emergencia del hospital al doctor Arsenio Ramírez Hernández, sobre la condición de la paciente, antes de darle de alta.

La condición de la recurrida continuaba y el 6 de enero de 2006, fue ingresada al Doctor's Center donde se le tuvo que practicar una cesárea, dando a lugar a que naciera una *"bebé femenino muerto (sic) y macerado de 9 libras y 2 onzas con líquido amniótico con meconio"*. (Ap. VI, pág. 19, acápite 13.)

Una vez ocurridas tales circunstancias, la recurrida Celenia Santiago Vázquez y su esposo Oscar Ríos Ríos,

presentaron demanda por impericia médica contra el Doctor's Center y el obstetra doctor Arsenio Ramírez Hernández que la atendía; no obstante, no se incluyó al médico que la evaluó en la Sala de Emergencia, por ser empleado de dicho hospital.

Luego de varios trámites ante el foro de instancia, inclusive, luego de celebrarse la conferencia con antelación a juicio y someterse el informe, el peticionario Doctor's Center, solicitó traer al pleito como tercero demandado al médico que atendió a la recurrida en la Sala de Emergencia, el doctor Fermín Hernández. (Ap. VIII, págs. 29-42.) El foro de instancia denegó tal solicitud del peticionario, pues era tardía, además, *"que el hospital tenía conocimiento desde el principio del pleito [del médico de la Sala de Emergencia] y no lo trajo en su momento"*. (Ap. III, pág. 13.)

Tal dictamen interlocutorio se emitió el 31 de julio de 2007 y se notificó el 2 de agosto de 2007 y advino final y firme como norma procesal del caso, pues no se acudió en su revisión al foro apelativo. Luego de ello, el 20 de agosto de 2007, el peticionario Doctors's Center le solicitó al foro de instancia que se desestimara la demanda por no haberse acumulado una parte indispensable por la recurrida como demandante, en específico al médico que la atendió en la Sala de Emergencia, y en la alternativa, porque la reclamación no justificaba la concesión de un remedio. (Ap. II, págs. 3-10.)

El foro de instancia denegó esta última moción de desestimación del Doctor's Center, y de ella se acude ante nos.

## II

Conforme el trámite antes esbozado, procedemos a discutir la norma jurídica aplicable según los errores alegados por Doctor's Center en su recurso de *certiorari*.

Alega Doctor's Center que incidió el foro de instancia a no permitirle traer al pleito a un tercero demandado, que no quiso acumular la parte demandante aquí recurrida, como demandado.

No le asiste la razón, según la norma jurídica vigente.

## A

El ordenamiento procesal apelativo dispone que para revisar cualquier resolución interlocutoria del Tribunal de Primera Instancia, se debe presentar un recurso de *certiorari* dentro del término de cumplimiento estricto de treinta (30) días desde la notificación de la resolución recurrida. Regla 53.1(e) de Procedimiento Civil, 32 L.P.R.A. Ap. III; Regla 32 del Reglamento del Tribunal de Apelaciones de 2004, 4 L.P.R.A. Ap. XXII-B; *García v. Porrata-Doria,* opinión de 22 de mayo de 2007, **2007 J.T.S. 102**, pág. 1486; *Zayas v. Royal Ins. Co. of P.R., Inc.,* 146 D.P.R. 694, 700 (1998).

El Tribunal Supremo ha definido que el término de *"cumplimiento estricto"*, le otorga al foro judicial la facultad de ejercer discreción para proveer justicia de acuerdo a las circunstancias particulares de cada caso. El Tribunal de Apelaciones no goza automáticamente de discreción para prorrogar el plazo para presentar el recurso de *certiorari*, sin que se justifiquen las razones de la dilación. *Véase, Arriaga v. F.S.E.,* 145 D.P.R. 122, 130-131 (1998); *García v. Porrata-Doria, supra.*

Por lo tanto, instado el recurso de *certiorari* fuera del plazo de cumplimiento estricto, sin que medie justa causa, el único curso a seguir es denegarlo o su desestimación. *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 D.P.R. 651, 658-659 (1997). *Véase,* además, *Figueroa v. Del Rosario,* 147 D.P.R. 121, 127-128 (1998).

Ahora bien, la denegatoria de acoger un recurso de *certiorari* de una resolución interlocutoria emitida por el Tribunal de Primera Instancia, por ser éste uno de naturaleza discrecional, significa que no se resuelven sus

méritos jurídicos. Nada impide que una vez resuelta de manera final la reclamación, se pueda plantear nuevamente el error en apelación. *Negrón v. Srio. de Justicia,* 154 D.P.R. 79, 93 (2001).

## B

En atención a la norma jurídica antes comentada, entendemos que el dictamen interlocutorio que emitió el foro de instancia denegando que se trajera como tercero demandado por parte de Doctor's Center al doctor Fermín Hernández, advino final y firme como norma procesal del caso, pues fue emitido el 31 de julio de 2007 y notificado a las partes el 2 de agosto de 2007. Ninguna de las partes litigantes cuestionó dicho dictamen ante el foro intermedio apelativo dentro del plazo de treinta (30) días desde su notificación, según lo dispone la Regla 53.1(e) de Procedimiento Civil, *supra.*

Por lo tanto, el recurso presentado por Doctor's Center el 3 de octubre de 2007, a sesenta y un (61) días plazo de haberse emitido la resolución antes comentada, sin que mediara justa causa por tal dilación, no puede ser atendido por este foro apelativo, por haberse presentado fuera del plazo de cumplimiento estricto dispuesto por ley. *Arriaga v. F.S.E., supra.*

## III

Por otra parte, nos alega Doctor's Center que incidió el foro de instancia al no desestimar la demanda cuando no se acumuló una parte indispensable o, en la alternativa, por dejar ésta de exponer una reclamación que justifique la concesión de un remedio.

Entendemos que tampoco dicho error fue cometido por el foro de instancia, por los siguientes fundamentos de derecho.

## A

La Regla 16.1 de Procedimiento Civil, *supra,* dispone que una parte indispensable es toda persona sin cuya presencia no pueda adjudicarse una reclamación, pues sus intereses y derechos podrían quedar afectados al emitirse la sentencia, al final del pleito. *Consejo de Titulares del Cond. Plaza del Mar v. Jetter Klare,* opinión de 1 de diciembre de 2006, **2006 J.T.S. 188**, pág. 572. *Véase,* además, *Romero v. Reyes,* opinión de 28 de abril de 2005, **2005 J.T.S. 66**, pág. 1168.

Se ha definido que el *"interés común"* que debe tener la parte que es indispensable para resolver una demanda debe ser de tal grado que, *"impida la confección de un decreto sin afectarlo". Sánchez v. Sánchez,* 154 D.P.R. 645, 678 (2001). En dicho caso, el Tribunal Supremo, citando la obra de J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* Tomo I, San Juan, **Publicaciones J.T.S.**, 2000, pág. 371, dispuso que:

*"Una parte indispensable es aquélla que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las otras partes en la acción sin lesionar y afectar radicalmente su interés.*

*La determinación de si se debe o no acumular una parte depende de los hechos específicos y circunstancias de cada caso individual y particular. Entre otros factores, se debe evaluar el tiempo en que se solicita el acumular a una parte, si el litigante que solicita acumular una parte tenía conocimiento de su existencia y dilató el trámite para traerla al pleito en una etapa avanzada o previo a comenzarlo, y la prueba y derechos que se puedan presentar durante el juicio. La parte que no se acumula en el pleito "no se le puede privar de sus derechos mediante sentencia". Cf. Granados v. Rodríguez Estrada II,* 124 D.P.R. 593, 605-606 (1989). *Véase,* además, *Unysis v. Ramallo Brothers,* 128 D.P.R. 842, 858 (1991).

## B

En cuanto a la responsabilidad de los hospitales, en nuestra jurisdicción se ha reconocido que éstos son responsables de los servicios rendidos por los médicos de su facultad y aquéllos que le extiende privilegios.

*Núñez v. Cintrón,* 115 D.P.R. 598, 605 (1984). *Véase,* J. Santos Briz, *Derecho de Daños,* Madrid, Ed. Rev., Der. Privado, 1963, págs. 374-375.

El foro supremo insular ha dispuesto que en aquellos casos donde el paciente acude directamente al hospital a recibir un servicio médico, se establece una relación principal entre éste y la administración del hospital. *"En esta situación, el médico es considerado un auxiliar del hospital, y la institución debe responder por el daño causado por el médico".* *Márquez Vega v. Martínez Rosado,* 116 D.P.R. 397, 408 (1985); *Pérez Cruz v. Hosp. Concepción,* 115 D.P.R. 731, 733 (1984). Tampoco aplica en tales circunstancias la figura jurídica de *"médico contratista independiente",* a fin de eximirle de responsabilidad civil al hospital por los servicios prestado por éste. *Márquez Vega v. Martínez Rosado, supra.*

En resumen, al amparo del Artículo 1803 del Código Civil, 31 L.P.R.A. sec. 5142:

*"[...] los hospitales también pueden ser responsables por la falta de pericia atribuible a sus empleados. Dicho estatuto recoge el principio de responsabilidad vicaria por virtud del cual una institución hospitalaria podría ser responsabilizada extracontractualmente por los actos negligentes cometidos por alguno de sus empleados."*

*López v. Cañizares,* opinión de 5 de octubre de 2004, **2004 J.T.S. 165**, pág. 298.

## C

De acuerdo a los fundamentos de derecho antes discutidos, concluimos que el dictamen del tribunal de instancia denegado la acumulación del doctor Fermín Hernández como tercero demandado del Doctor's Center es correcto en derecho.

Surge de un examen de las alegaciones de la demanda que la recurrida presentó la reclamación contra el Hospital Doctor's Center, pues alegadamente recibió los servicios en la Sala de Emergencia de dicha institución. Por lo tanto, el referido hospital es responsable, como norma general, por aquellos actos negligentes que se comenten por sus empleados, incluyendo a la facultad médica y aquellos médicos a los cuales se les extiende privilegios, cuando éstos ofrecen servicios médicos a los pacientes que acuden a recibir un servicio de salud en el hospital.

Ante tales circunstancias y sin pasar juicio sobre la validez de las alegaciones de la demanda, la recurrida no tenía que traer al médico que la atendió en la Sala de Emergencia como parte demandada, pues la responsabilidad, si alguna, por impericia médica, le sería oponible al hospital que ofreció el servicio médico, en este caso, el Hospital Doctor's Center de Arecibo. Conteste a la norma jurídica expuesta, el doctor Fermín Hernández no tendría un *"interés común"* afectado de adjudicarse la reclamación en su ausencia, pues para todos los fines legales no es responsable civilmente frente a la parte demandante aquí recurrida. La responsabilidad civil del doctor Fermín Hernández, si alguna, es frente al hospital Doctor's Center, como médico que realizaba funciones en la Sala de Emergencia de dicho hospital.

De otra parte, la solicitud de Doctor's Center de que se le permitiera acumular como tercero demandado al doctor Fermín Hernández, luego de haber transcurrido casi un año de litigación en las etapas preliminares del caso, fue tardía como dispuso el foro de instancia. (Ap. III, pág. 13.) Es un hecho que no está en controversia que el Doctor's Center conocía desde que fue presentada la demanda en su contra, quién fue el médico que atendió a la parte recurrida cuando ésta acudió a la Sala de Emergencia, pues dicho galeno trabajaba para dicha institución. Por lo cual, la petición de Doctor's Center de traer al médico Fermín Hernández va dirigida a posponer la vista en los méritos del caso, pues ello conllevaría el reabrir el descubrimiento de prueba el cual está en su etapa final y el de tener que celebrar una nueva conferencia con antelación al juicio.

Publicaciones JTS presenta dos nuevas obras de Derecho Penal:
Derecho Procesal Penal: Etapa investigativa y Derecho Penal Sustantivo.

# Ernesto L. Chiesa

# DERECHO PROCESAL PENAL: ETAPA INVESTIGATIVA

Ernesto L. Chiesa obtuvo su bachillerato en Artes (Filosofía) en la Universidad de Puerto Rico en 1964; obtuvo una Maestría en Filosofía en la misma institución en 1967. Luego cursó estudios doctorales en Lógica en la Universidad de California en Berkeley. En 1974 obtuvo el grado de Juris Doctor –Magna Cum Laude– en la Escuela de Derecho de la Universidad de Puerto Rico. Ha ocupado diversas posiciones en la Universidad de Puerto Rico desde 1964 hasta el presente, incluyendo Catedrático de la Escuela de Derecho donde dicta cursos de evidencia, derecho penal y procedimiento criminal. Ocupó el puesto de Secretario del Tribunal Supremo desde septiembre de 1976 hasta agosto de 1981. Fue colaborador del Tribunal Supremo en la preparación del Proyecto de Reglas de Evidencia que finalmente fuera aprobado en el 1979. Ha publicado sendos artículos de revistas jurídicas. Ha sido principal colaborador de la publicación JTS®™ y autor del Análisis Editorial de Práctica Procesal Puertorriqueña - Evidencia y de la obra Derecho Procesal Penal de Puerto Rico y Estados Unidos. Su Obra Magna es el Tratado de Derecho Probatorio, bajo el sello editorial de Publicaciones JTS. El Profesor Chiesa es continuamente citado por el Tribunal Supremo al igual que por el Tribunal de Apelaciones y los Tribunales de Primera Instancia en Puerto Rico. Entre sus múltiples distinciones profesionales se cuentan: Miembro del American Law Institute; Director de la Conferencia Judicial de Puerto Rico (1990-93); Presidente del Comité de Reglas de Evidencia de la Conferencia Judicial de Puerto Rico (1984-88); Miembro del Comité de Procedimiento Criminal y Evidencia (1984-92); Miembro Honorario del Ilustre Colegio de Abogados Penalistas de Bogotá (1994) y Académico Numerario de la Academia Puertorriqueña de Jurisprudencia y Legislación.

Actualmente preside el Comité del Tribunal Supremo que revisa las Reglas de Procedimiento Criminal (con el objetivo de someter a la Asamblea Legislativa unas nuevas reglas) y es miembro de otro Comité del Tribunal Supremo que revisa las Reglas de Evidencia. Fue miembro del Comité del Tribunal Supremo que estuvo a cargo de la Revisión del Manual de Instrucciones al Jurado. Desde hace más de 18 años, el Profesor Chiesa trabaja como asesor del Secretario de Justicia y del Procurador General en materia de Derecho Penal, Derecho Procesal Penal y Evidencia.

Esta obra pretende presentar una exposición del derecho procesal penal en la etapa investigativa, con énfasis en los derechos constitucionales que amparan al ciudadano en esa etapa del procedimiento. Habida cuenta de la primacía de la Carta de Derechos en esta zona, se alude continuamente a la jurisprudencia de la Corte Suprema de los Estados Unidos y a la del Tribunal Supremo de Puerto Rico, que son las fuentes de derecho primarias. Como es harto sabido, los derechos de la persona reconocidos en la Carta de Derechos de la Constitución de los Estados Unidos tienen que ser reconocidos por los gobiernos de los Estados y de Puerto Rico, aunque éstos pueden reconocer garantías adicionales. En el Capítulo I se aborda lo relativo a la aplicación de la Carta de Derechos de la Constitución de los Estados Unidos a Puerto Rico.

En el Capítulo II se expone el derecho que gobierna el interrogatorio de testigos y sospechosos, materia gobernada por las cláusulas del debido proceso de ley, privilegio contra la autoincriminación y asistencia de abogado. Se aborda, además, lo relativo a la determinación de admisibilidad y suficiencia de las declaraciones obtenidas en esa etapa. Aquí, el derecho constitucional es totalmente controlante, con poca regulación estatutaria.

En el Capítulo III se expone el derecho aplicable a los procedimientos de identificación de sospechosos fuera de corte. Se aborda la protección constitucional que brindan el debido proceso de ley y el derecho a asistencia de abogado, y se explica por qué no hay protección bajo el derecho contra la autoincriminación. Se alude también al rol del derecho a la intimidad en esta zona. Por supuesto, se aborda la regulación estatutaria en la Regla 252 de Procedimiento Criminal.

En el Capítulo IV, por mucho el más extenso, se aborda el complicado derecho que rige la protección constitucional contra registros y detenciones irrazonables, tanto bajo la Enmienda Cuarta como bajo la mayor protección que surge de las secciones 1, 8 y 10 de la Carta de Derechos de la Constitución de Puerto Rico. Por supuesto, se considera también la regulación en las Reglas de Procedimiento Criminal, particularmente la Regla 234 que gobierna lo relativo a la moción de supresión de evidencia. Es en este Capítulo que se aborda el derecho constitucional a la intimidad. Se aborda primeramente todo lo relativo a la regla de exclusión en que se traduce la protección constitucional (alcance de la regla de exclusión y la

moción de supresión) y luego se aborda el alcance de la protección constitucional. Esto, a su vez, se divide en las exigencias para una orden judicial de arresto o de registro (warrant clause) y en la exigencia constitucional de razonabilidad para arrestos o registros sin orden judicial. De ahí la necesidad de aludir al derecho que gobierna el arresto sin orden y lo relativo a los distintos registros sin previa orden judicial. También se consideran registros y detenciones particulares, como el "stop and frisk", la detención y registro de vehículos, registros administrativos y otros.

Finalmente, en el Capítulo V se aborda el derecho constitucional contra la autoincriminación. Primeramente se aborda el derecho en general: su alcance, limitaciones, la inmunidad como mecanismo para neutralizar el privilegio, etc. Luego se atiende lo relativo al derecho especial que ampara al ya acusado a no declarar y a que no se hagan inferencias del ejercicio de ese derecho. Aunque esta dimensión del derecho supone ya el inicio de la acción penal (más allá de la etapa investigativa), se incluye para presentar una visión más completa del derecho contra la autoincriminación. En el Capítulo II ya se había abordado el derecho contra la autoincriminación en la zona del interrogatorio de testigos y sospechosos. (Miranda y su progenie).

Se advierte que queda fuera de ese libro lo relativo al derecho especial que gobierna la legislación federal especial "antiterrorista", es decir, el Patriot Act y las acciones legislativas y ejecutivas en esta sensitiva zona. Para eso hay que considerar la literatura especializada y esperar por más jurisprudencia de la Corte Suprema que aclare la validez de las limitaciones a los derechos constitucionales de la persona que entraña esa legislación.

Este libro va dirigido a estudiantes, abogados, fiscales y jueces. No hay pretensión alguna más allá de ayudar a éstos a encontrar, y tal vez entender mejor, el derecho positivo que aparentemente gobierna los procesos de investigación criminal tratados en este trabajo. Por supuesto, estamos ante una zona de continuo devenir; se produce mucha jurisprudencia que cambia ese pretendido derecho positivo. De ahí la necesidad de suplementar anualmente este libro para incorporar la jurisprudencia del Tribunal Supremo de Puerto Rico y de la Corte Suprema de los Estados Unidos.

# Lic. Luis E. Chiesa

## Derecho Penal Sustantivo

Luis Ernesto Chiesa Aponte es Profesor Adjunto de Derecho Penal en la Facultad de Derecho de Pace University en White Plains, New York. Obtuvo su Bachillerato en Administración de Empresas y revalidó como Contador Público Autorizado. Luego obtuvo su grado de Juris Doctor (Summa Cum Laude) en la Facultad de Derecho de la Universidad de Puerto Rico. Posteriormente, recibió el grado de Maestría en Derecho (LL.M) de Columbia University. Actualmente se encuentra cursando estudios conducentes al grado de Doctor en las Ciencias Jurídicas (J.S.D.) en Columbia University. Una porción de su tesis doctoral, la cual versa sobre ciertos aspectos debatidos de la teoría de la antijuricidad penal, ha sido aceptada para publicación en el Buffalo Criminal Law Review. Además, ha publicado sendos artículos en las principales revistas jurídicas de Puerto Rico sobre distintos aspectos del derecho penal.

Antes de comenzar sus labores docentes en Pace University, Luis Ernesto Chiesa fue Profesor Adjunto de Derecho Penal en la Facultad de Derecho de la Universidad de Puerto Rico y Oficial Jurídico del Juez Presidente del Tribunal Supremo de Puerto Rico, Hon. Federico Hernández Denton. Durante dicho tiempo, fue asesor del Comité para la Revisión del Manual de Instrucciones al Jurado de Puerto Rico adscrito al Secretariado de la Conferencia Judicial.

La teoría de la responsabilidad penal que sirve de base al Nuevo Código Penal es totalmente distinta a la que inspiró el Código Penal de 1974. A consecuencia de ello, bajo el Nuevo Código Penal es posible aducir una multiplicidad de planteamientos que bajo el Código Penal de 1974 no podían defenderse con seriedad. Ahora, por ejemplo, puede argumentarse que quien no contribuyó de forma significativa a la comisión del delito debe ser castigado mucho menos severamente que los verdaderos "autores" de la ofensa (Arts. 43-45 del Nuevo Código Penal). Esto era insostenible bajo la normativa sobre coautoría que se había adoptado en el viejo código (Art. 35 del Código Penal 1974).

Además, conforme al Artículo 9 del Nuevo Código Penal, el principio de favorabilidad ahora claramente aplica también hasta en los casos en que el convicto está cumpliendo su sentencia. Ello era, cuanto menos, dudoso bajo el anterior código. La figura de la tentativa también sufrió cambios.

Ahora solamente pueden hallarse incurso en tentativa quienes ejecutan el último acto necesario para consumar el delito. Según el viejo código, esto no era un elemento esencial de la tentativa.

De otra parte, a tenor con el Artículo 13 del Nuevo Código Penal, ya no rige en Puerto Rico la doctrina de "interpretación restrictiva" de los estatutos penales. Ahora, distinto a lo que ocurría bajo la normativa desarrollada por el Tribunal Supremo en cuanto a este particular, las leyes criminales pueden interpretarse tanto restrictiva como extensivamente. La única interpretación prohibida es la "analógica" en virtud de la cual se crean judicialmente nuevos delitos o penas.

Para entender cabalmente estos y el resto de los cambios sustanciales que ha sufrido nuestro ordenamiento penal como consecuencia del Nuevo Código, es necesario realizar un análisis comparado de los preceptos contenidos en dicho código. Sólo así puede comprenderse el alcance de las nuevas doctrinas que han sido incorporadas al derecho penal puertorriqueño por medio de este nuevo intento codificatorio. Precisamente ese es el propósito de esta obra.

El análisis que hacemos de la materia equipara al estudiante y al profesional con los conocimientos necesarios para poder sacarle el máximo provecho al Nuevo Código Penal.

Incluimos, además, el texto completo del Nuevo Código Penal con Anotaciones del Lic. Chiesa en relación con la Jurisprudencia Interpretativa del Tribunal Supremo y las enmiendas legislativas que ha sufrido dicho Código. También, se incluye sin costo alguno un DVD que contiene sobre 4,500 págs. de los documentos del historial legislativo del Nuevo Código Penal, que incluyen, entre otros: Los estudios de base, las ponencia de las Vistas Públicas sobre el Código; los Proyectos radicados en el Senado y la Cámara, los Informes de Comisión, el debate y votación final en el Senado y el trámite en la Cámara, el Código Penal y sus enmiendas y las Leyes Complementarias a la Reforma del Código Penal.

## El bosquejo de la obra es el siguiente:

▶ Introducción
- Breve recuento del proceso que culminó con la aprobación del Nuevo Código Penal.
- Examen de las bases conceptuales que subyacen al Nuevo Código Penal.

▶ Limitaciones Constitucionales al Ejercicio del Poder Punitivo
- Implicaciones del debido proceso de ley para la redacción e interpretación de leyes penales.
- Leyes Ex Post Facto y la Jurisprudencia Reciente Sobre este Particular.
- Proporcionalidad y Castigos Crueles e Inusitados
- Separación de Poderes y el Llamado "Delito Administrativo"
- Los Límites al Poder de Criminalizar Conductas que Impone el Debido Proceso Sustantivo y el Derecho a la Intimidad

▶ Limitaciones Estatutarias al Ejercicio del Poder Punitivo
- El Principio de Legalidad y sus Cuatro Consecuencias
- La Eliminación de la Regla de Interpretación Restrictiva
- El Problema de las Fuentes del Derecho Penal y la Limitada Aplicabilidad del Principio de Legalidad en Puerto Rico
- El Más Robusto Principio de Favorabilidad del Nuevo Código Penal
 - » Los Problemas de la "Tercera Ley"
 - » Las Leyes Intermedias
 - » Las Leyes Temporales como Excepción a Este Principio (Art. 10 del Nuevo Código Penal)
- El Concurso de Leyes y Delitos
 - » Concurso Real
 - » Concurso Ideal y Medial
 - » Concurso Aparente
 - » Delito Continuado
 - » Delito Masa – ¿Aplica a Puerto Rico?

▶ El Primer Eslabón de la Teoría de la Responsabilidad Penal – El Comportamiento Humano
- Acciones Penalmente Relevantes
- Omisiones Penalmente Relevantes

- La llamada Comisión por Omisión (Art. 19 del Nuevo Código Penal)
- La Posesión como Comportamiento
- Casos Límite – Hipnosis, Sonambulismo, Eutanasia

▶ El Segundo Eslabón de la Teoría de la Responsabilidad Penal – La Antijuricidad
- Elementos Objetivos de la Ofensa
- Causalidad y la Nueva Figura de "imputación objetiva" y "riesgo permitido" (Art. 25).
- Elementos Subjetivos – Dolo Eventual v. "Temeridad" o "Recklessness".
- Los Elementos Subjetivos Distintos a la Intención y su Relación con la Eximente de Intoxicación Voluntaria
- El Error de Tipo del Art. 19 como una Forma de Excluir la Intención
- Las Defensas de Justificación en Puerto Rico – La Nueva y Más Restrictiva Defensa de Estado de Necesidad

▶ El Tercer Eslabón de la Teoría de la Responsabilidad Penal en Puerto Rico – La Punibilidad
- El Mayor Alcance de la Eximente de Coacción
- La Nueva Defensa de Temor Insuperable
- Las Defensas No-Exculpatorias y el Entrampamiento

INCLUYE CD QUE CONTIENE SOBRE 4,500 PAGS. DE LOS DOCUMENTOS DEL HISTORIAL LEGISLATIVO DEL NUEVO CÓDIGO PENAL

Publicaciones JTS presenta dos nuevas obras de Derecho Penal:
Derecho Procesal Penal: Etapa Investigativa y Derecho Penal Sustantivo

PRSRT STD
U.S. POSTAGE
PAID
SAN JUAN, P.R.
PERMIT NO. 1175

PO BOX 9024120
SAN JUAN, P.R. 00902-4120
TEL. 721-0200

P.O. Box 9024120
San Juan, P.R. 00902-4120
Tel. 721-0200 Fax. 721-0205
www.pub-jts.com

Sres: Favor enviarme un ejemplar de su nuevo libro: Fecha_____

____ Derecho Procesal Penal: Etapa Investigativa (Prof. Chiesa) - $100.00 + $3.50 S/H = $103.50
____ Derecho Penal Sustantivo (Lic. L. E. Chiesa) - $100.00 + $3.50 S/H = $103.50
____ Ambos libros (un ahorro de $50.00) - $150.00 + $6.00 S/H = $156.00

Envíese a Lcdo(a)._____

Dirección:_____

_____ Zip Code_____

Tel:_____ Fax:_____ E mail:_____

Forma de pago: ____ Adjunto cheque por $_____ pagadero a Publicaciones JTS.
Cárguese el importe de esta orden ($_____) a mi tarjeta de crédito: ___ AX ___ MC ___ VISA
Núm. de tarjeta _____ Fecha exp._____ Firma_____

Autorizo a Publicaciones JTS a renovar automáticamente estas suscripciones a su aniversario (12 meses calendario).
De no desear la renovación enviaré cancelación escrita a Publicaciones JTS.

En resumen, la demanda instada por Celenia Santiago Vázquez contra el Hospital Doctor's Center puede ser adjudicada en los méritos en ausencia del médico Fermín Hernández y, por ende, no procede en derecho desestimarse la demanda ante la ausencia de dicha parte, bajo la Regla 16 de Procedimiento Civil, *supra*.

## D

Por último, en cuanto a la alegación de Doctor's Center que la demanda no expone la reclamación que justifique la concesión de un remedio, basta con señalar que la Regla 10.2 de Procedimiento Civil, *supra*, según interpretada por nuestro más alto foro insular, requiere que para que se desestime una demanda por las alegaciones, "*el promovente [bajo toda certeza] no tiene derecho a remedio alguno bajo cualquiera hechos que pueda probar en juicio.*" *Véase*, *Montañez v. Hosp. Metropolitano*, 157 D.P.R. 96, 105 (2002); *Pressure Vessel P.R. v. Empire Gas P.R.*, 137 D.P.R. 497, 505 (1994).

Se le impone al tribunal de instancia que debe conceder el beneficio de "*cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda*", antes de resolver que se desestime la misma por sus alegaciones. Todo ello, pues las demandas deben ser interpretadas de la manera más favorable para el demandante. *Véase*, *Harguindey Ferrer v. U.I.*, 148 D.P.R. 13, 30 (1999); *Unysis v. Ramallo Brothers, supra*.

La norma jurídica para que proceda la desestimación de una demanda por las alegaciones, bajo la Regla 10.2 de Procedimiento Civil, *supra*, es que:

"*[...] con toda certeza, el demandante no tiene derecho alguno, bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación.*"

*Reyes v. Sucn. Sánchez Soto*, 98 D.P.R. 305, 309 (1970).

## E

En atención a la norma jurídica comentada y del examen de las alegaciones presentadas de la demanda por la recurrida Celenia Santiago Vázquez, es claro que no procede la desestimación de la demanda bajo la Regla 10.2 de Procedimiento Civil, *supra*. Sin pasar juicio sobre la validez de las alegaciones de la demanda, entendemos que debe considerarse si el diagnóstico y tratamiento que recibió la parte demandante aquí recurrida en la Sala de Emergencia del Hospital Doctor's Center de Arecibo fue conforme a las normas generalmente reconocidas en la profesión médica. Además, si la muerte de la bebé fue por motivo de la impericia médica de la Sala de Emergencia y del médico de la recurrida. No se debe perder de perspectiva que hay alegaciones específicas por parte de la recurrida del alegado tratamiento que ésta recibió cuando acudió en dos ocasiones a la Sala de Emergencia con síntomas de parto.

Entendemos, sin tener que llegar "*a cuanta inferencia sea posible*" de los hechos alegados en la demanda, que este es un caso que tiene que ser adjudicado en los méritos por el foro de instancia para determinar si medió negligencia médica por parte del Doctor's Center y el doctor Arsenio Ramírez Hernández. En resumen, no procede en derecho la desestimación de la demanda por las alegaciones, cuando hay fundamentos para una reclamación por impericia médica. *Unysis v. Ramallo Brothers, supra*.

Cabe señalar que nuestro dictamen denegando expedir el auto de *certiorari*, no prejuzga los méritos de la demanda instada por Celenia Santiago Vázquez y Oscar Ríos Ríos, ni priva a la parte que se vea afectada con el dictamen final que emita el Tribunal de Primera Instancia para acudir a este foro apelativo en solicitud de su revisión. *Negrón v. Srio. de Justicia, supra*.

Hacemos nuestras las palabras emitidas en *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807, 816 (1986):

"*Una parte no tiene derecho a que su caso adquiera vida eterna en los tribunales, manteniendo a la otra en*

*un estado de incertidumbre, sin más excusas para su falta de diligencia e interés en la tramitación del mismo que una escueta referencia a circunstancias especiales".*

**IV**

Por los anteriores fundamentos, se deniega expedir el auto de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones